S94A0545. KIDWELL v. THE STATE.
S94A0549. SHIELDS v. THE STATE.
(444 SE2d 789)

THOMPSON, Justice.
Via a two-count indictment, Joyce Kidwell, Jeffrey Shields, Lori Shields, William Webster Shields, and Robert Dogenbaugh, were charged with the murder, and conspiracy to commit the murder, of Thomas Kidwell, Sr. The case proceeded to trial against Joyce

---

Kidwell, Jeffrey Shields and Lori Shields. In the midst of the trial, the State sought, and the trial court granted, immunity for Lori Shields. Thereafter, the jury found Joyce Kidwell and Jeffrey Shields guilty upon both counts of the indictment. The trial court merged the conspiracy conviction with the murder conviction and sentenced Kidwell and Shields to prison for life.[1]

1. Thomas Kidwell, Sr., and his wife, Joyce Kidwell were separated in August 1989. Joyce remained in the couples' DeKalb County house. Thomas lived in a nearby condominium. He visited the house every day to get his mail and see the dogs.

For a period of time beginning in December 1989, Joyce Kidwell's son, Jeffrey Shields, and daughter-in-law, Lori Shields, shared an apartment with Kevin Bennett and Betty Lynn Cahill. William Webster Shields, Joyce's former husband and Jeffrey's father, came to live with them after he was paroled from a Kentucky prison in March 1990. Lori and Jeffrey Shields were familiar with William's criminal record.

Joyce Kidwell often visited with William Shields after he arrived at the apartment. On one occasion, she told William that if she could have Thomas Kidwell killed she would do it. William replied that he could "have it arranged" and that no one would know where, when, or how it was done.

Kevin Bennett and Betty Lynn Cahill moved out of the apartment in late March. Shortly thereafter, Robert Dogenbaugh escaped from a prison in Kentucky. He and William Shields had been in prison together and he too came to stay in the Shields' apartment.

Kevin Bennett stayed in close touch with William, Lori and Jeffrey Shields. Jeffrey told Kevin that Robert Dogenbaugh was the "hit man" and that he was an escapee from a Kentucky prison. Kevin saw Joyce Kidwell talking with Robert and he heard Robert, William, Jeffrey and Lori Shields talk about killing Thomas Kidwell.

Subsequently, Joyce Kidwell told William Shields that Thomas Kidwell was in Florida on business and that "this would be . . . the perfect opportunity." In short order, Kevin Bennett was offered $5,000 to drive William and Jeffrey Shields and Robert Dogenbaugh to Florida. The plan was to "slit [the victim's] throat." At first, Kevin decided to go along with the plan. The next morning, he changed his mind and told William Shields that he was backing out. William

---

[1] The victim was last seen on May 7, 1990. His body was discovered on May 11, 1990. The indictment was returned against appellants on February 22, 1991. Trial began on May 6, 1991. The jury returned its verdict on May 15, 1991, and appellants were sentenced the same day. Appellants' amended motions for new trial were denied on November 8, 1993. Appellant Shields filed a notice of appeal on November 17, 1993; appellant Kidwell filed a notice of appeal on November 29, 1993. The cases were docketed on January 11, 1994, and argued orally on April 18, 1994.

Shields threatened to kill Kevin and Betty Lynn Cahill if he told any-one about the plan.

Thomas Kidwell was last seen alive on May 7, 1990. Four days later, on May 11, 1990, his body was found in the trunk of his car in Fulton County. Kidwell's head and face had been beaten with a blunt object and he had been shot in the head. His body was wrapped in a blanket taken from the Kidwells' house.

On May 8, 1990, a fire destroyed the Kidwells' house. Investiga-tors determined that an accelerant was used and that the cause of the fire was arson. The day before the fire, Lori Shields brought the Kidwells' dogs to the apartment; Joyce Kidwell had dinner there and spent the night.

Joyce Kidwell was the beneficiary of insurance policies (totalling approximately $200,000) insuring the life of Thomas Kidwell. After the fire, but before Thomas Kidwell's body was found, William Shields called Lori Shields from Florida and told her to "buy stock and invest your money."

The evidence was sufficient to enable a rational trier of fact to find Joyce Kidwell and Jeffrey Shields guilty beyond a reasonable doubt of the murder of Thomas Kidwell, Sr. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During trial, the State presented evidence of other crimes com-mitted by William Shields[2] and Robert Dogenbaugh.[3] Appellants con-tend the trial court erred in admitting such evidence because the other crimes were not "similar" and were not committed by the de-fendants on trial.

The evidence demonstrated that appellants knew William Shields and Robert Dogenbaugh had committed other crimes. Thus, the evidence of other crimes was relevant to prove that appellants knew of their co-conspirators' capacity and/or propensity to kill Thomas Kidwell and that they procured them to kill him. See *Baker v. State*, 246 Ga. 317, 319 (271 SE2d 360) (1980) (evidence is relevant if it renders the desired inference more probable than it would be without the evidence). The trial court admitted the evidence for that limited purpose and gave ample and appropriate instructions along

---

[2] William Shields and an accomplice entered the home of the victim, intending to rob a safe. They were unable to crack the safe so they waited for the victim to come home. William shot the victim in the head (but he survived). A second accomplice drove a getaway car. That accomplice's ex-wife was the victim's girl friend. Charges of burglary, robbery and attempted murder were brought against William. He was ultimately arrested in another state.

[3] Robert Dogenbaugh entered the home of a victim, slit his throat, wrapped him in a blanket, put him in the trunk of a car, and drove the car two counties away. He parked the car, poured an accelerant in it, tried to set fire to it (using a trail of accelerant as a wick), and left. The car failed to catch fire.

those lines.[4] Given the probative value of the evidence and the court's limiting instructions, we find no error in the admission of this evidence.

3. Appellants' assertion that the trial court failed to limit the jury's consideration of the evidence of other crimes is without merit. The trial court charged the jury both before and after this evidence was admitted and in its final instructions that the evidence was to be considered for a "very limited purpose," to wit: to determine whether William Shields and Robert Dogenbaugh were capable of murdering Thomas Kidwell and each defendant on trial knew that they were capable of killing him. The trial court made it clear that the jury was not to consider the evidence for any other purpose.

4. Appellants assert the trial court commented on the evidence in violation of OCGA § 17-8-57 when it instructed the jury on two occasions that the other crimes committed by Robert Dogenbaugh and William Shields were "very similar" to the facts surrounding the murder of Thomas Kidwell. The trial court merely informed the jury of the state's contention that the other crimes were "very similar" to the crime in this case. Moreover, the defendants did not object to the instruction on the ground now asserted.

5. Appellants contend the state violated *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) by failing to provide them with transcripts from the trials of Robert Dogenbaugh and William Shields. They argue that if the transcripts had been turned over to them, they would have been able to demonstrate that the evidence of other crimes was inadmissible.

Appellants failed to allege or prove that the prosecution was in possession of the transcripts prior to or during the trial. See *Cunningham v. State*, 248 Ga. 558, 561 (284 SE2d 390) (1981) (*Brady* applies to discovery after trial of information which had been known to the prosecution but unknown to the defense). Besides, the transcripts were public records and just as accessible to defendants as to the state. See *Conklin v. State*, 254 Ga. 558, 566 (331 SE2d 532) (1985) (death certificate is public record which state does not have to furnish despite timely request pursuant to OCGA § 17-7-211).

6. There is no merit to the assertion that the state misrepresented the other crimes committed by William Shields and Robert Dogenbaugh (by characterizing the evidence as "very similar" or "fingerprint" crimes) when it persuaded the trial court to admit the other crimes in evidence. The prosecutor did not misrepresent the facts of the other crimes and the trial court so ruled at the hearing on the motion for new trial.

---

[4] See Division 3.

7. It cannot be said that the trial court abused its discretion in admitting photographs of the victim that Robert Dogenbaugh killed previously, as well as photographs of that victim's car. The photographs were relevant to show the appellants knew Dogenbaugh was capable of committing the crime in the manner in which it was contemplated. The mere fact that they might have inflamed or prejudiced the jury did not render them inadmissible. *Harris v. State*, 260 Ga. 860, 864 (5) (401 SE2d 263) (1991); *Sprouse v. State*, 242 Ga. 831, 833 (3) (252 SE2d 173) (1979).

8. Appellant Kidwell asserts that the trial court committed prejudicial error in instructing the jury after the evidence of other crimes was admitted that Robert Dogenbaugh and William Shields were not being tried with the other defendants because Dogenbaugh was a "prisoner" in another jurisdiction and Shields was a "fugitive." We cannot consider this assertion because no objection was lodged below on the ground now urged.

9. Pointing to circumstantial evidence that the murder took place in DeKalb County, appellants assert that the state failed to prove venue in Fulton County.

OCGA § 17-2-2 (c) provides, in part:

> If a dead body is discovered . . . and it cannot be *readily determined* in what county the cause of death was inflicted it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered.

(Emphasis supplied.) Although circumstances pointed to DeKalb County as the place of death, no actual evidence of the murder was ever found in DeKalb County. Thus, the place of death could not be "readily determined," and venue was appropriate in Fulton County where the body was found. OCGA § 17-2-2 (c); *Aldridge v. State*, 236 Ga. 773, 774 (1) (225 SE2d 421) (1976).

Appellants also contend that newly discovered evidence, a post-trial videotaped statement of Lori Shields, demonstrates that the murder took place in DeKalb County; that, therefore, venue did not lie in Fulton County; and that the case must be tried anew in DeKalb County.

Newly discovered evidence must be such that "has come to [the appellants'] knowledge since the trial . . . ." *Lipscomb v. State*, 194 Ga. App. 657, 659 (391 SE2d 773) (1990). It does not encompass a state's witness whose post-trial declaration merely adds to the testimony she gave at trial. See *Richey v. State*, 132 Ga. App. 188 (207 SE2d 672) (1974). See generally *Hall v. State*, 117 Ga. 263 (43 SE 718) (1903); *Duren v. Clark*, 47 Ga. App. 429, 430 (2) (170 SE 693) (1933). Appellants are not entitled to a new trial on the basis of newly

discovered evidence. *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980); *Foreman v. State*, 200 Ga. App. 400 (408 SE2d 178) (1991).

10. Appellant Shields contends the trial court erred by refusing to sever his case when, in the midst of trial, immunity was granted to his wife, Lori Shields, and she took the stand and testified. We find no error.

> Since the grant or denial of a motion to sever is left in the discretion of the trial court, its ruling will only be reversed for an abuse of discretion. . . . The burden is on the defendant requesting the severance to "make a clear showing of prejudice. . . ." [Cits.]

*Baker v. State*, 238 Ga. 389, 391 (233 SE2d 347) (1977).

> Defendant [wife] voluntarily testified at trial and therefore defendant [husband] was not deprived of the opportunity to cross-examine [her] or otherwise present evidence to distinguish [his] culpability from that of [his wife]. No abuse of discretion was shown and we will not reverse the trial court's denial of the motion to sever.

*Rimmer v. State*, 197 Ga. App. 294, 296 (5) (398 SE2d 282) (1990).

11. In their amended motions for new trial, each appellant asserted ineffective assistance of counsel. Appellant Shields alleged that his trial counsel's performance was deficient because he was intoxicated on several different days during the course of the trial. Appellant Kidwell alleged her trial counsel was ineffective because he failed to investigate the evidence of other crimes committed by William Shields and Robert Dogenbaugh.

At the evidentiary hearing, appellant Shields' trial attorney testified he was not intoxicated during the trial and the original trial judge testified that he did not appear to be intoxicated. Appellant Kidwell's attorney testified he spent a considerable amount of time and resources on pretrial preparation but decided not to investigate the evidence of other crimes because the theory of the defense was that his client was not involved in the conspiracy and had no knowledge of the other crimes. The trial court determined that appellant Shields' attorney was not intoxicated during the trial and his performance was not affected in any way, and that the decision of appellant Kidwell's attorney to forego an investigation of the other crimes was strategic and sound.

Based on the evidence adduced at the hearing and giving proper deference to the trial court's findings of fact, appellants have failed to demonstrate that their trial attorneys' representation fell below an

objective standard of reasonableness or that there is a reasonable probability that the outcome of the trial would have been different but for the alleged errors. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Jowers v. State*, 260 Ga. 459 (396 SE2d 891) (1990). Thus, the court properly denied appellants' amended motions for new trial on the ground of ineffective assistance of counsel. *Bowley v. State*, 261 Ga. 278, 280 (4) (404 SE2d 97) (1991).

12. The trial court charged the jury: "[E]very element of the crime [must be] proven beyond a reasonable doubt and to a moral and reasonable certainty. . . . Moral and a reasonable certainty is all that can be expected in a legal investigation." When considered in the context of the charge as a whole, the use of the words "moral and reasonable certainty" did not constitute reversible error. *Swayzer v. State*, 263 Ga. 689, 690 (2) (436 SE2d 652) (1993); *Vance v. State*, 262 Ga. 236, 237, 238 (416 SE2d 516) (1992).

*Judgment affirmed. All the Justices concur, except Hunt, C. J., and Fletcher, J., who concur in the judgment only; Sears-Collins and Hunstein, JJ., concur specially.*

SEARS-COLLINS, Justice, concurring specially.

I agree that the appellants' knowledge of prior murders committed by the alleged co-conspirators is relevant to the question of the appellants' conspiracy to commit murder. See majority opinion, pp. 429-430. However, the photographs of the previous murder victim were not necessary to establish the fact of the prior murders and have questionable relevance to the appellants' knowledge of the prior murders. See majority opinion, p. 431. This is especially true because, at the time of the conspiracy, the appellants would have had no access to the photographs, which were in the hands of the state. Thus, I disagree with the conclusion reached in Division 7 of the majority opinion. However, I believe the admission of the photographs was harmless error under the standard set forth in *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976), and I therefore concur in the judgment of the majority.

I am authorized to state that Justice Hunstein joins in this special concurrence.

DECIDED JULY 5, 1994 —
RECONSIDERATION DENIED JULY 21, 1994.

*Brian Steel*, for appellant (case no. S94A0545).
*L. David Wolfe*, for appellant (case no. S94A0549).
*Lewis R. Slaton, District Attorney, Rebecca A. Keel, Doris L. Downs, Assistant District Attorneys, Michael J. Bowers, Attorney*

*General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Assistant Attorney General,* for appellee.