**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 31, 2017**

# In the Court of Appeals of Georgia

A16A1495. ISSA v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Ahmed Issa on one count of conspiracy to commit armed robbery, one count of burglary, four counts of aggravated assault, three counts of attempt to commit armed robbery, three counts of false imprisonment, and one count of possession of a firearm during the commission of a felony. Issa appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence supporting his attempt-to-commit-armed-robbery convictions and arguing that the trial court erred in (1) denying his motion for severance; (2) finding that the aggravated-assault counts were not fatally flawed; (3) improperly instructing the jury on aggravated assault; (4) denying a mistrial when a State's witness testified that Issa exercised his right to remain silent; (5) allowing the State to ask leading

questions on direct examination; (6) failing to apply the rule of lenity when sentencing him as a recidivist on the attempted-armed-robbery convictions; and (7) denying his claim of ineffective assistance of counsel. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that in November of 2008, C. D. was taking accounting courses at a local college and living at a home in Roswell, which he shared with his older brother, F. D., who was attending another local college, and his younger sister M. D., who was in high school. On November 11, 2008, C. D. arrived home late after classes and went straight to bed; but a few hours later, he was shaken out of his slumber by a masked intruder brandishing a handgun. A struggle immediately ensued, and the gun fired, injuring C. D.'s finger. Nevertheless, C. D. valiantly continued to fight off the masked intruder, during which time the gun fired a second time, striking the intruder in the leg. But after a second intruder (who was also masked) entered his bedroom, C. D. desisted in his efforts to subdue the first intruder.

Down the hall, C. D.'s younger sister, M. D., awoke to the sounds of C. D. screaming and gunshots. She jumped out of bed and sprinted toward C. D.'s bedroom,

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

2

but was immediately stopped by the second intruder who ordered her to lie on the floor. Meanwhile, the first (and now wounded) intruder—who was in a considerable amount of pain—began yelling at the second intruder to shoot C. D., but M. D. begged him to spare C. D.'s life. At the same time, C. D.'s older brother, F. D.—who had also been asleep in his own bedroom on the same hall—similarly awoke to the eery sounds of fighting, gunshots, and his younger sister's screams. But as F. D. exited his bedroom and rushed toward the danger, the second armed intruder stopped him and ordered him to lie on the floor as well. The two intruders then used telephone cords to bind the hands and feet of all three siblings and dragged them into the hall.

Once the siblings were tied and lying bound in the hall, the intruders began violently kicking and hitting them while demanding to know where "the money and dope" were located. The siblings repeatedly denied having either drugs or large amounts of money, but the intruders did not believe them until C. D. revealed that the safe in his bedroom contained only documents. At this point, the first intruder begged the second intruder to leave the house so that he could seek immediate medical treatment for his wounded leg. But instead of departing, the second intruder dragged M. D. from the hall into her bedroom, shut the door, and raped her. A few minutes later, the second intruder ceased his sexual assault of M. D. at the behest of his

3

wounded accomplice, who continued to complain that he was in severe pain and needed to leave.

Subsequently, the two intruders forced all three siblings downstairs and began loading electronics and other valuables from the home into C. D.'s car, with their plan being to take F. D. with them and force him to withdraw money from an ATM. But coincidentally, as the intruders had nearly completed loading C. D.'s car, fire-department vehicles arrived across the street in response to a neighbor's 911 call about possible heart issues. Seeing the flashing emergency lights, and believing that the police had been alerted to the home invasion, the two intruders fled out the back door of the home post haste and scaled a wooden fence marking the boundary of the backyard. After waiting a few minutes to make sure that the intruders had indeed left the scene, the siblings untied themselves and raced across the street to inform the fire-department personnel about the home invasion.

Upon determining that none of the siblings' injuries were life-threatening, the fire-department personnel called the police, who arrived within a few minutes and began collecting evidence, including blood from inside the home and from one of the wooden-fence slats. The siblings were then transported to a nearby hospital where an

emergency-room physician treated C. D. for the bullet wound to his finger and a cut to the back of his head, and also performed a rape-kit examination on M. D.

Because the siblings could not identify either of the masked intruders, the police detective who interviewed F. D. asked if he knew of any reason someone would want to break into his home or if he had noticed anything strange relating to their home recently. Upon considering the question, F. D. recalled that several days before the home invasion, he did, in fact, have an odd encounter with a woman whom he met over the summer but had not spoken with since that time. Her name was Destiny Forrester, and the two encountered each other in a Decatur nightclub one evening before departing for Forrester's apartment, where they then engaged in sexual relations. After that night, F. D. went out with Forrester a few more times, but ceased contacting her when it appeared that she was not interested in dating him. Then, out of the blue (and several nights before the home invasion), Forrester sent F. D. a text message at around 10:00 p.m., asking if she could come over to his house. F. D. agreed, provided her with directions, and she arrived an hour or so later. But immediately upon entering the home, Forrester seemed distant and not interested in having intimate relations, as F. D. had assumed. Instead, she was focused on looking around the home and spent an inordinate amount of time constantly reading and

5

composing text messages. When F. D. asked with whom she was texting, Forrester claimed that it was her roommate. Shortly thereafter, she asked to see the backyard and left abruptly when F. D. refused her request.

Based on this information, the detective obtained an order for Forrester's mobile-phone records, and a review of those records showed that the person with whom she was texting on the night in question was Kenneth Trusty. Next, the detective interviewed Forrester, and she ultimately admitted that she, her boyfriend (Darius Cook), and Trusty, who was Cook's roommate, planned to rob F. D. on the night she went to his home, believing him to be a drug dealer. In addition, Forrester further admitted that she spoke to Cook and went to his apartment early on November 12, 2008, at which time she learned that Trusty and another man, whom she did not know, broke into F. D.'s home in an attempt to rob him, and that the other man was shot during the incident. With this additional information, and later after matching the blood found on one of the wooden-fence slats with a DNA sample already in CODIS,[2] the detective determined that the name of Trusty's accomplice was Ahmed Issa and

---

[2] CODIS, the Combined DNA Indexing System, is a database of DNA profiles linked among the states through the Federal Bureau of Investigation.

that, mere hours following the home invasion, Issa sought and received medical treatment at Grady Hospital for a gunshot wound to his leg.

Thereafter, the State charged Trusty, Issa, and Cook, via the same indictment, with one count of conspiracy to commit armed robbery,[3] and charged Trusty and Issa with one count of burglary,[4] one count of rape,[5] four counts of aggravated assault,[6] three counts of attempt to commit armed robbery[7] (one count as to each victim), three counts of kidnapping with bodily injury[8] (one count as to each victim), three counts of false imprisonment[9] (one count as to each victim), two counts of possession of a firearm during the commission of a felony,[10] and two counts of possession of a firearm by a convicted felon.[11] Issa filed a motion to sever, which was denied, and the

---

[3] *See* OCGA § 16-4-8.

[4] *See* former OCGA § 16-7-1 (a) (2011).

[5] *See* former OCGA § 16-6-1 (a) (1) (2010).

[6] *See* former OCGA § 16-5-21 (a) (2) (2009).

[7] *See* OCGA §§ 16-4-1; 16-8-41 (a).

[8] *See* former OCGA § 16-5-40 (a), (b) (4) (2008).

[9] *See* OCGA § 16-5-41 (a).

[10] *See* OCGA § 16-11-106 (b).

[11] *See* former OCGA § 16-11-131 (b) (2011).

7

case then proceeded to a joint trial of Trusty and Issa,[12] during which the foregoing evidence was admitted. At the trial's conclusion, the jury convicted Issa of all charges except the rape and kidnapping offenses.[13]

Subsequently, Issa obtained new counsel and filed a motion for new trial. After conducting a hearing on the matter, the trial court merged the conspiracy and attempted-armed-robbery convictions for sentencing, vacated both the burglary and possession-of-a-firearm-during-the-commission-of-a-felony convictions, but denied Issa's motion in all other respects. This appeal follows.

1. In his initial enumeration of error, Issa challenges the sufficiency of the evidence supporting his convictions generally and specifically argues that the evidence was insufficient to support his convictions on the attempted-armed-robbery charges. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer

[12] Cook had not been apprehended at the time of trial and, thus, was not tried with his co-defendants.

[13] The jury convicted Trusty of all charges except the kidnapping charges relating to F. D. and C. D. and the possession-of-a-firearm-by-a-convicted-felon charge, which was nolle prossed. We affirmed his convictions in Case No. A16A0701 in an unpublished opinion.

enjoys a presumption of innocence.[14] And in evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility but only decide whether "a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[15] Accordingly, the jury's verdict will be upheld so long as "there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case[.]"[16] With these guiding principles in mind, we turn first to Issa's more specific challenge.

Under OCGA § 16-4-1, "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." And under OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence

---

[14] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[15] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson*, 443 U.S. at 319 (III) (B).

[16] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

9

of another by use of an offensive weapon . . . ." Here, Count 8 of the indictment charged Issa with criminal attempt to commit armed robbery, alleging that he

> performed an act which constituted a substantial step toward the commission of armed robbery, to wit: holding [C. D.] at gunpoint and demanding money and drugs, and then gathering up items of his personal property and placing them into the victim's car with intent to commit theft and take property from the person and immediate presence of [C. D.] by use of an offensive weapon . . . .

And changing only the names of the victims, Counts 9 and 10 charged Issa with criminal attempt to commit armed robbery against F. D. and M. D., respectively.

Citing to the specific language in the indictment, Issa contends that the evidence was insufficient to support his attempted-armed-robbery convictions because the State failed to prove which victim owned which property. This argument is a nonstarter. As we have previously explained, robbery is "a crime against possession, and is not affected by concepts of ownership."[17] Indeed, the gravamen of the offense of armed robbery is "the taking of items from the possession of another by use of an offensive weapon, and not the identification of the specific owner of the

---

[17] *Creecy v. State*, 235 Ga. 542, 543 (5) (221 SE2d 17) (1975); *accord Ward v. State*, 304 Ga. App. 517, 522 (1) (a) (696 SE2d 471) (2010); *Harp v. State*, 302 Ga. App. 17, 18 (690 SE2d 424) (2010)

10

item taken."[18] Thus, if property is taken from "the immediate presence or the actual or constructive possession of more than one victim, the defendant may be charged with the robbery of each victim."[19]

As for the indictment, the general rule that allegations and proof must correspond is "based upon the requirements (1) that the accused is definitely informed of the charges against him so he can present his defense and not be surprised by the evidence at trial, and (2) that he is protected against another prosecution for the same offense."[20] And here, the indictment sufficiently alleged the elements of attempted armed robbery. Indeed, there can be no reasonable doubt that Issa was "sufficiently informed of the charges against him and also protected from subsequent prosecution

---

[18] *Ham v. State*, 303 Ga. App. 232, 237 (1) (b) (692 SE2d 828) (2010) (punctuation omitted); *see McKisic v. State*, 238 Ga. 644, 646 (2) (234 SE2d 908) (1977) ("The identity of the person alleged to have been robbed is not an essential element of the crime and need not be proved by direct evidence."); *Ward*, 304 Ga. App. at 522 (1) (b) (same).

[19] *Harp*, 302 Ga. App. at 18 (punctuation omitted); *see Green v. State*, 265 Ga. App. 126, 128 (2) (592 SE2d 901) (2004) ("If two victims are robbed, the defendant may be charged with the robbery of each victim.").

[20] *Ham*, 303 Ga. App. at 237 (1) (b) (punctuation omitted); *accord Veasey v. State*, 322 Ga. App. 591, 594 (1) (b) (745 SE2d 802) (2013); *Green v. State*, 292 Ga. 451, 452 (738 SE2d 582) (2013) ("The purpose of an indictment is to inform the accused of the charges against him and to protect the accused against another prosecution for the same offense.").

for the same crime."[21] Additionally, the evidence presented at trial showed that two men, ultimately identified as Trusty and Issa, broke into the victims' home, held all three victims at gunpoint while demanding drugs and money, and began loading electronics and other valuables from the home into the victims' vehicle before fleeing the premises based on their mistaken belief that law-enforcement officers had arrived on the scene. Consequently, the evidence was sufficient to support Issa's three attempted-armed-robbery convictions.[22]

---

[21] *Ham*, 303 Ga. App. at 237 (1) (b) (punctuation omitted); *accord Veasey*, 322 Ga. App. at 594 (1) (b); *see Haley v. State*, 289 Ga. 515, 529 (3) (b) (712 SE2d 838) (2011) (holding that indictment sufficiently informed defendant of the charge against him so as to enable him to prepare a defense, and thus, there is no claim that he was surprised at trial).

[22] *See Nyane v. State*, 306 Ga. App. 591, 592 (1) (703 SE2d 53) (2010) (holding that evidence defendant approached victim with a handgun while attempting to obtain money from convenience-store cash register, but fled without taking cash, was sufficient to support convictions for attempted armed robbery); *see also Ham*, 303 Ga. App. at 237 (1) (b) (holding that evidence supported the defendant's convictions on charges of armed robbery of both victims, despite no proof of which victim owned the property taken, when evidence showed that both victims "were subjected to the robbers' exercise of actual force by the use of an offensive weapon so as to induce the relinquishment of the property"); *Harp*, 302 Ga. App. at 18 (holding that evidence was sufficient to support convictions for two counts of armed robbery when money was taken from one victim's immediate presence at gunpoint and given to second victim, and second victim was then forced to surrender the money to defendant at gunpoint).

Issa also generally contends that there was only slight evidence connecting him to the home invasion at issue, and thus his convictions should be reversed. But it is well-settled that "circumstantial evidence of identity may be sufficient to enable a rational trier of fact to find a defendant guilty beyond a reasonable doubt."[23] And having reviewed the entirety of the record, we conclude that there was indeed sufficient evidence to support his remaining convictions.[24]

2. Issa contends that the trial court erred in denying his pre-trial motion to sever his trial from that of his co-defendant, Trusty, arguing that his convictions were a result of the prejudicial spillover effect of evidence, including other bad acts, against Trusty. Again, we disagree.

The decision of whether or not to grant or deny a motion to sever is within the discretion of the trial court,[25] which it should exercise by considering the following three factors:

---

[23] *Patch v. State*, 337 Ga. App. 233, 236-37 (1) (786 SE2d 882) (2016) (punctuation omitted).

[24] *See Jackson*, 443 U.S. at 319 (III) (B).

[25] *Jones v. State*, 318 Ga. App. 26, 36 (5) (733 SE2d 72) (2012); *see Kidwell v. State*, 264 Ga. 427, 432 (10) (444 SE2d 789) (1994) ("Since the grant or denial of a motion to sever is left in the discretion of the trial court, its ruling will only be reversed for an abuse of discretion . . . .").

(1) whether the number of defendants will create confusion of the law and evidence applicable to each defendant; (2) whether there is a danger that evidence admissible against one defendant will be considered against another despite cautionary instructions to the contrary; and, (3) whether the defenses of the co-defendants are antagonistic to each other.[26]

Importantly, the burden is on the defendant requesting the severance to do more than "raise the possibility that a separate trial would give him a better chance of acquittal."[27] Specifically, to prevail on a motion to sever, the defendant must "make a clear showing of prejudice and a consequent denial of due process."[28]

Here, the number of defendants (two) was small enough that the danger of confusing the jury was minimal, especially as both Issa and Trusty were charged with jointly participating in nearly all of the offenses arising out of the same crime scheme,

---

[26] *Jones*, 318 Ga. App. at 36 (5) (punctuation omitted); *accord McClendon v. State*, 299 Ga. 611, 615 (3) (791 SE2d 69) (2016).

[27] *Jones*, 318 Ga. App. at 36 (5) (punctuation omitted); *see Kidwell*, 264 Ga. at 432 (10) ("The burden is on the defendant requesting the severance to "make a clear showing of prejudice . . . ."").

[28] *Jones*, 318 Ga. App. at 36 (5). (punctuation omitted); *see Kidwell*, 264 Ga. at 432 (10).

*i.e.*, the home invasion.[29] Additionally, both Issa and Trusty denied ever entering the victims' home; and although Trusty testified at trial, he did not implicate Issa in doing so. Thus, their defenses were not antagonistic to one another.[30] And while the State presented evidence of other similar bad acts committed by Trusty, before it did so, the trial court explicitly instructed the jury that such evidence "pertains to Mr. Trusty only and not to the other accused," and that "[t]his evidence may be considered by the jury for the sole issue or purpose against the party for which the evidence is limited and not for any other purpose."[31] Finally, as for the alleged spillover effect of the evidence generally, "the mere fact that the evidence against [Trusty] might have been

---

[29] *See McClendon*, 299 Ga. at 615 (3) (holding that trial court did not abuse discretion in denying motion to sever because trial of three defendants would not create confusion) *Jones*, 318 Ga. App. at 36 (5) (holding that trial court did not abuse discretion in denying motion to sever given that trial of only two defendants would not create confusion).

[30] *See McClendon*, 299 Ga. at 615 (3) (holding that trial court did not abuse discretion in denying motion to sever because co-defendants' defenses were not antagonistic); *Jones*, 318 Ga. App. at 36 (5) (same).

[31] *See White v. State*, 315 Ga. App. 54, 62 (7) (726 SE2d 548) (2012) (holding that similar-transaction evidence against co-defendant did not require severance given that trial court instructed jury that such evidence only pertained to co-defendant).

15

stronger than the evidence against [Issa] does not mandate severance."[32] Given these particular circumstances, the trial court did not abuse its discretion in denying Issa's motion to sever.

3. Issa also contends that the trial court erred in ruling that the aggravated-assault counts in the indictment were not fatally flawed. Yet again, we disagree.

As noted *supra*, the purpose of an indictment is "to enable the defendant to prepare his defense intelligently and to protect him from double jeopardy."[33] And an indictment is technically correct and sufficient if it "states the offense in the terms and language of the Code or in language so plain that jurors understand the nature of the charged offense."[34] Consequently, the true test of the sufficiency of an indictment

> is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged,

---

[32] *White v. State*, 281 Ga. 276, 280 (3) (637 SE2d 645) (2006); *see White*, 315 Ga. App. at 63 (7) (noting that it is not enough for the defendant to show that she would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is stronger, rather the defendant must show clearly that a joint trial prejudiced her defense, resulting in a denial of due process).

[33] *State v. Austin*, 297 Ga. App. 478, 478 (677 SE2d 706) (2009) (punctuation omitted); *accord Ham*, 303 Ga. App. at 237 (1) (b); *See Green*, 292 Ga. at 452 ("The purpose of an indictment is to inform the accused of the charges against him and to protect the accused against another prosecution for the same offense.").

[34] *Austin*, 297 Ga. App. at 478.

16

and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.[35]

In this matter, Count 4 of the indictment charged Issa with aggravated assault with a deadly weapon, alleging that he "did unlawfully commit an assault upon the person of [C. D.] by shooting him with a handgun, a deadly weapon . . . ." Counts 5 through 7 also charged him with aggravated assault with a deadly weapon upon each of the three victims, alleging that he "did unlawfully commit an assault upon the person of [the victim] by pointing at [the victim] with a handgun, a deadly weapon." All four counts essentially follow the language of former OCGA § 16-5-21 (a) (2), which provided that a person commits aggravated assault when he assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily

---

[35] *Id.* at 478-79 (punctuation omitted).

17

injury."[36] And an indictment that is *"substantially* in the language of the Code is sufficient in form and substance."[37]

Issa, nevertheless, argues that the aggravated-assault counts charged no crime at all and were, thus, void, because they failed to allege the elements of simple assault, *i.e.*, that he attempted to commit a violent injury to the person of another or that he committed an act which placed another in reasonable apprehension of immediately receiving a violent injury.[38] But this contention lacks merit. As the Supreme Court of Georgia has explained, "[i]t is not necessary that an indictment charging a defendant with aggravated assault specify the manner in which the simple assault was committed, but it must set forth the aggravating aspect."[39] Accordingly, because the indictment "used the language of the statute, included the essential

---

[36] *See* former OCGA § 16-5-21 (a) (2) (2009).

[37] *Austin*, 297 Ga. App. at 480 (punctuation omitted); *see also State v. Wyatt*, 295 Ga. 257, 260 (2) (759 SE2d 500) (2014) (noting that "an indictment couched in the language of the statute alleged to have been violated" is not subject to a general demurrer" (punctuation omitted)).

[38] *See* OCGA § 16-5-20 (a).

[39] *Chase v. State*, 277 Ga. 636, 638 (1) (592 SE2d 656) (2004); *accord State v. Wyatt*, 295 Ga. 257, 261 (2) (a) (759 SE2d 500) (2014).

18

elements of the offense, and was sufficiently definite to advise [Issa] of what he must be prepared to confront, it was not void."[40]

4. In a related enumeration of error, Issa contends that the trial court erred by improperly instructing the jury on aggravated assault, arguing that the court failed to also instruct the jury as to the elements of simple assault. However, this contention is belied by the record and, thus, lacks merit.

Initially, it is important to note that Issa did not object to any portion of the trial court's jury charges, and under OCGA § 17-8-58, "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."[41] The failure to so object precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects the substantial rights of the parties."[42] In such cases, as the Supreme Court of

---

[40] *Johnson v. State*, 286 Ga. 432, 434 (687 SE2d 833) (2010); *see Austin*, 297 Ga. App. at 480 (holding that an indictment that is substantially in the language of the Code is sufficient in form and substance).

[41] OCGA § 17-8-58 (a).

[42] OCGA § 17-8-58 (b); *see also Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012) (holding that OCGA § 17-8-58 (b) requires an appellate court to review for plain error an alleged jury-instruction error to which no objection was

19

Georgia has explained, "the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."[43] Consequently, because Issa failed to object whatsoever to the jury charges, our review is limited to consideration in this regard.[44]

It is, of course, well established that "the charge to the jury is to be taken as a whole and not out of context when making determinations as to its correctness."[45] And in this matter, the trial court provided the jury with the following instruction pertaining to aggravated assault:

> The offenses charged in Counts IV, V, VI, and VII are aggravated
> assault, and they will apply to all of those four charges in the indictment

---

raised at trial); *Wheeler v. State*, 327 Ga. App. 313, 318 (3) (758 SE2d 840) (2014) (same).

[43] *Alvelo*, 290 Ga. at 615 (5) (punctuation omitted); *accord Wheeler*, 327 Ga. App. at 318 (3).

[44] *See* OCGA § 17-8-58 (b); *see also State v. Alvarez*, 299 Ga. 213, 214 (1) (790 SE2d 66) (2016) (noting that when trial counsel fails to object to a jury charge, appellate courts must review the issue under the plain-error doctrine); *Wheeler*, 327 Ga. App. at 318 (3); *King v. State*, 317 Ga. App. 834, 836-37 (1) (733 SE2d 21) (2012).

[45] *Minor v. State*, 328 Ga. App. 128, 132 (2) (a) (761 SE2d 538) (2014) (punctuation omitted); *see Drayton v. State*, 297 Ga. 743, 748-49 (2) (b) (778 SE2d 179) (2015) (explaining that before a jury charge will be considered reversible error, it must be considered in the context of the jury instructions as a whole).

and will be the same definition of the crime charged but different alleged victims.

Georgia law provides a person commits the offense of aggravated assault when that person assaults another person with a deadly weapon. To constitute such an assault actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that a defendant attempted to cause violent injury to the alleged victim [sic] under the intention of committing an act that placed the victim within reasonable fear of receiving a violent injury.

The State must also prove as a material fact of aggravated assault in this case that the assault was made with a deadly weapon. A firearm, when used as such, is a deadly weapon as a matter of law.

As previously noted, Issa argues that the trial court erred by failing to instruct the jury on simple assault as being part of the offense of aggravated assault. But the transcript clearly shows that the court instructed the jury as to both forms of simple assault in its aggravated-assault instruction. In doing so, rather than using the disjunctive "or" between the two definitions, the court seemed to combine the two definitions. But even assuming that the seemingly incorrect word "under" was not a transcription error, it was at worst a slip of the tongue. And the general rule is that "the existence of a mere verbal inaccuracy in a jury instruction, resulting from a

21

palpable 'slip of the tongue' and which could not have misled or confused the jury will not provide a basis for reversal of a defendant's conviction."[46] Furthermore, in addition to the charge quoted above, the trial court had earlier instructed the jury in its charges that "[t]he burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." The court also provided the jury with a copy of the indictment for review during its deliberations. Given these instructions as a whole, the trial court's aggravated-assault instruction did not constitute plain error.[47]

5. Issa also contends that the trial court erred in denying a mistrial after a State's witness testified that Issa exercised his right to remain silent upon being arrested and after the State's prosecutor referenced Issa's failure to testify during closing arguments. Again, we disagree.

---

[46] *Green v. State*, 291 Ga. 287, 294 (8) (a) (728 SE2d 668) (2012) (punctuation omitted); *accord Madison v. State*, 329 Ga. App. 856, 865 (2) (766 SE2d 856) (2014); *Williams v. State*, 303 Ga. App. 222, 230-31 (6) (692 SE2d 820) (2010).

[47] *See Flournoy v. State*, 294 Ga. 741, 743-44 (2) (755 SE2d 777) (2014) (holding that even when a jury instruction is defective, such a defect is cured when the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt); *Wheeler*, 327 Ga. App. at 319-20 (3) (same).

It is axiomatic that a defendant's "exercise of his rights to remain silent and to be represented by counsel is not to be used as evidence against him."[48] That said, an improper comment on these rights "does not necessarily require reversal."[49] In fact, the grant or denial of a mistrial is within the trial court's sound discretion, and "the appellate court will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial was essential to preserve the right to a fair trial."[50]

In this matter, during its direct examination of the lead police detective, the State's prosecutor recounted the detective's investigation that lead to him discovering that Issa sustained a gunshot wound on the night in question and then asked, "What was your next step?" The detective responded, "I had previously, before taking

[48] *Jefferson v. State*, 312 Ga. App. 842, 852 (6) (720 SE2d 184) (2011); *see Whitaker v. State*, 283 Ga. 521, 524 (3) (661 SE2d 557) (2008) (noting that the fact that a defendant has exercised the right to remain silent is not to be used against the defendant at trial).

[49] *Jefferson*, 312 Ga. App. at 852 (6); *see Whitaker*, 283 Ga. at 524 (3) (noting that [a]n improper comment on the defendant's silence does not necessarily require a reversal).

[50] *Whitaker*, 283 Ga. at 524 (3) (punctuation omitted); *see Jefferson*, 312 Ga. App. at 852-53 (6) (explaining that "[t]he grant or denial of a mistrial is within the trial court's sound discretion, and the appellate court will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial was essential to preserve the right to a fair trial." (punctuation omitted)).

photos for Ahmed Issa, I had taken warrants out for him for the incident at [the victims' home]. And once he was arrested, he refused to talk to us, but I also had a —" At this point, Issa's counsel immediately objected and moved for a mistrial. But after a lengthy discussion outside the presence of the jury, the trial court found that the detective's remark was not prompted by the State prosecutor's question and, therefore, denied Issa's motion. Once the jury returned, the court gave a curative instruction, directing the jury to ignore the detective's last response. And following a juror's question regarding which remark to ignore, the court clarified and confirmed, via a show of hands and general verbal agreement, that the jury would not construe the comment against the accused.

Issa argues that the trial court erred in refusing to grant a mistrial based on the lead detective's testimony. But testimony about the defendant remaining silent is not deemed to be prejudicial if "it is made during a narrative on the part of the authorities of a course of events and apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant."[51] Rather, to warrant a

---

[51] *Whitaker*, 283 Ga. at 524 (3) (punctuation omitted); *see Parks v. State*, 281 Ga. App. 679, 681 (2) (637 SE2d 46) (2006) (holding that comment on defendant's silence was not reversible error because, *inter alia*, it did not have the effect of being probative on guilt or innocence).

24

reversal of a defendant's conviction, "the evidence of the election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury."[52] And here, the detective's remark was not directed to any particular statement or defense offered by Issa, but was instead made during the detective's explanation of the course of his investigation. Furthermore, there is no indication that the remark had the effect of being probative on the issue of guilt or innocence, and the trial court promptly gave a curative instruction to the jury. Under these particular circumstances, the court did not abuse its discretion in refusing to grant a mistrial.[53]

Nevertheless, Issa argues that the prejudicial effect of the detective's comment was compounded during the State's closing argument, when the prosecutor was attacking the account Issa allegedly provided hospital staff to explain his gunshot wound. Specifically, the prosecutor argued:

---

[52] *Whitaker*, 283 Ga. at 524 (3) (punctuation omitted); *see Parks*, 281 Ga. App. at 681 (2) (same).

[53] *See Whitaker*, 283 Ga. at 524 (3) (holding that trial court did not abuse its discretion in denying a mistrial and instead giving a curative instruction when an improper comment on a defendant's silence was not directed to any particular statement or defense offered by the defendant, was made during the witness's explanation of the course of events, and did not have the effect of being probative on the issue of guilt or innocence); *Jefferson*, 312 Ga. App. at 853 (6) (same).

25

> If he could tell a story to the doctor's to protect his own skin, that's exactly what he's going to do now. He knows the charges that he's facing are really serious, so he's going to come up with a story. Well, actually he didn't even come up with a story, as far as you know. All you know is that the defense attorney, Mr. Sheppard, gave you a theory.

Issa's counsel objected, claiming that the prosecutor was making an improper comment about Issa's decision not to testify, but the trial court disagreed that the comment could be construed in such a way and overruled the objection.

Issa argues that the trial court erred in overruling his objection to this part of the State prosecutor's closing argument. But in determining whether a prosecutor has improperly commented on an accused failure to testify,

> we must evaluate whether the prosecutor's manifest intention was to comment on the accused's failure to testify or whether the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify.[54]

Importantly, it is not impermissible for the State to "comment on the general failure of the defense to produce any evidence, since counsel for the State may argue that

---

[54] *Jennings v. State*, 282 Ga. 679, 681-82 (4) (653 SE2d 17) (2007) (punctuation omitted); *accord Dingler v. State*, 293 Ga. App. 27, 31 (3) (666 SE2d 441) (2008).

evidence showing guilt has not been rebutted or contradicted."[55] Here, the State prosecutor's comments were not directed at Issa's decision not to testify, but were instead directed at the defense's failure to adequately explain the State's evidence.[56] Accordingly, again, the trial court did not abuse its discretion in denying a mistrial.

6. Issa further contends that the trial court erred in allowing the State to ask its own witness leading questions. Once again, we disagree.

During the State's case, it called Destiny Forrester as a witness. The State's prosecutor immediately asked Forrester, "You don't want to be here, do you?" Forrester responded, "No, I don't want to." Then, with the very next question, the prosecutor asked Forrester if she was afraid of the defendants, and she responded affirmatively. Over the course of the next few minutes of the direct examination, the prosecutor asked Forrester several leading questions, and Trusty's counsel eventually

---

[55] *Dingler v. State*, 293 Ga. App. 27, 31 (3) (666 SE2d 441) (2008) (punctuation omitted); *see Ponder v. State*, 268 Ga. 544, 545 (2) (491 SE2d 363) (1997) (holding that it was permissible for prosecutor to comment on the general failure of the defense to produce any evidence).

[56] *See Ponder*, 268 Ga. at 545 (2) (finding that prosecutor's comment that defendant failed to offer evidence in his own defense, was not an inappropriate comment on defendant's failure to testify but was directed at defense counsel's failure to explain the State's evidence.); *Dingler*, 293 Ga. App. at 31 (3) (same).

27

objected. But the trial court overruled the objection, stating "The witness has already testified she don't want to be here, so I will give her some leeway and let her lead."

Issa argues that allowing the State to ask leading questions of its own witness constituted reversible error. But a trial court has discretion to permit leading questions on direct examination when "a witness is reluctant, hostile, or overly nervous."[57] Moreover, it would be a rare case in which "the trial court's exercise of discretion on this issue would warrant reversal."[58] And here, at the very start of the direct examination, Forrester testified that she did not want to testify and that she was afraid of the defendants, thus demonstrating both reluctance and nervousness. Accordingly, the trial court did not abuse its discretion in allowing the State to conduct its direct examination of Forrester with leading questions.[59]

---

[57] *Culler v. State*, 277 Ga. 717, 721 (5) (594 SE2d 631) (2004); *accord Spencer v. State*, 328 Ga. App. 1, 5 (3) (761 SE2d 464) (2014); *see* OCGA § 24-6-611 (c) ("When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.").

[58] *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993); *accord Spencer*, 328 Ga. App. at 5 (3).

[59] *See Fugate*, 263 Ga. at 265 (10) (holding that the State could ask leading questions of its witness, a co-defendant who had entered a plea, after witness initially refused to answer questions in violation of her plea agreement); *Spencer*, 328 Ga. App. at 5 (3) (same).

7. Issa next contends that the trial court erred in failing to apply the rule of lenity when sentencing him as a recidivist on the attempted-armed-robbery convictions. Specifically, Issa argues that his sentence on these convictions is void because there is an ambiguity between the recidivist statute, the armed-robbery statute, and the criminal-attempt statute. Yet again, we disagree.

We first note, as our Supreme Court has explained, that the rule of lenity finds its roots in the vagueness doctrine, "which requires fair warning as to what conduct is proscribed."[60] More precisely, the rule of lenity "ensures that if and when an ambiguity exists in one or more statutes, such that the law exacts varying degrees of punishment for the same offense, the ambiguity will be resolved in favor of a defendant, who will then receive the lesser punishment."[61] Nevertheless, if after applying the traditional canons of statutory construction "the relevant text remains unambiguous, the rule of lenity will not apply."[62]

---

[60] *McNair v. State*, 293 Ga. 282, 283 (745 SE2d 646) (2013) (punctuation omitted); *accord Gordon v. State*, 334 Ga. App. 633, 634 (780 SE2d 376) (2015).

[61] *Gordon*, 334 Ga. App. at 634 (punctuation omitted); *see McNair*, 293 Ga. at 283 (noting that the rule of lenity provides that statutory ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment).

[62] *Gordon*, 334 Ga. App. at 634-35; *see McNair*, 293 Ga. at 284 (stating that the rule of lenity does not apply when the statutory provisions are unambiguous).

Turning now to the statutes at issue, OCGA § 17-10-7 (a), in part, provides:

> . . . any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

Under OCGA § 16-8-41 (b), "[a] person convicted of the offense of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years." And under OCGA § 16-4-6 (a), "[a] person convicted of the offense of criminal attempt to commit a crime punishable by death or by life imprisonment shall be punished by imprisonment for not less than one year nor more than 30 years."

In this matter, after the jury rendered its verdict, the State introduced evidence that Issa had previously been convicted of felony offenses. The trial court then imposed separate sentences of 30 years for each of the three attempted-armed-robbery convictions.

30

On appeal, Issa argues that the interplay between the three foregoing statutes created an ambiguity that renders his sentence void. But only a few years ago, this Court held "that the construction of OCGA § 17-10-7 (a) as applied to the armed robbery statute is clear: the longest period of time prescribed for punishment of armed robbery is life imprisonment."[63] And we further concluded that there was "no ambiguity in the application of OCGA § 17-10-7 (a) to the sentencing provisions in the armed robbery statute."[64] Similarly, here, there is no ambiguity in the application of OCGA § 17-10-7 (a) to the sentencing provision for attempted armed robbery, which—under OCGA § 16-4-6 (a)—carries a maximum sentence of 30 years given the fact that a completed armed robbery carries a maximum sentence of life imprisonment.[65] In light of these circumstances, the sentence imposed by the trial

---

[63] *Mack v. State*, 323 Ga. App. 821, 823 (748 SE2d 299) (2013); *see Worley v. State*, 265 Ga. 251, 252 (1) ("The armed robbery statute clearly specifies that a person convicted of armed robbery can be sentenced to prison for life . . . ."); *Lester v. State*, 309 Ga. App. 1, 5 (2) (710 SE2d 161) (2011) (concluding that life imprisonment was the longest authorized punishment for a conviction of armed robbery).

[64] *Mack*, 323 Ga. App. at 823; *see also Worley*, 265 Ga. at 253 (2) (holding that the armed robbery statute can be reconciled with OCGA § 17-10-1 and its sentencing provision is not unconstitutionally void for vagueness).

[65] *See* OCGA § 16-8-41 (b).

court for Issa's attempted-armed-robbery convictions falls within the statutory range and is not void.

8. Finally, Issa contends that the trial court erred in denying his claim of ineffective assistance of counsel. Once again, we disagree.

In order to prevail on his claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[66] which requires Issa to demonstrate that his trial counsel's performance was "deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[67] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[68] Unless clearly erroneous, this Court "will uphold a trial

---

[66] 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[67] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[68] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[69] Bearing these guiding principles in mind, we turn now to Issa's specific claim.

Faced with testimony from all three victims that one of the perpetrators suffered a gunshot wound to the leg during the home invasion, testimony from an emergency-room physician that he treated Issa for a gunshot wound to the leg several hours after the home invasion, and Issa's blood found on a wooden fence slat in the back yard of the subject home, Issa's counsel argued in his closing that his client went with others to the victims' home but abandoned the robbery plan, was then shot by one of the other perpetrators, and remained in the back yard for some time after being wounded. And in a further effort to explain why all three victims testified that the perpetrator who struggled with C. D. was shot, Issa's counsel posited that this unknown perpetrator faked being wounded after the gun fired during the struggle and continued this charade while in the home, knowing that doing so would implicate a wounded Issa still waiting in the back yard.

---

[69] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

Issa now contends, as he did in his motion for new trial, that his trial counsel's argument during closing was so absurd that it amounted to ineffective assistance. But during the hearing on Issa's motion for new trial, his trial counsel testified that in light of the strong—albeit circumstantial—evidence against his client, he believed that his theory of a third perpetrator, who faked being shot after the struggle with C. D., distanced Issa from the egregious crimes that occurred inside the victims' home and best explained why Issa's blood was found outside on the fence but was not conclusively matched with any of the blood found inside the home. And this is exactly the kind of strategic decision that, generally, cannot and will not "serve as the basis for an ineffective assistance claim."[70] Indeed, a strategy that "presents alternative defense theories—all of which are better for the defendant than the prosecution theory of the case—generally falls within the broad range of reasonable professional conduct."[71] And counsel's reasoned explanation for his strategy here was

---

[70] *Maurer v. State*, 320 Ga. App. 585, 595 (6) (g) (740 SE2d 318) (2013) (punctuation omitted).

[71] *State v. Mobley*, 296 Ga. 876, 881 (770 SE2d 1) (2015).

"not so unsound that no reasonable lawyer would have pursued it."[72] Thus, the trial

court did not err in denying Issa's claim of ineffective assistance of counsel.

For all the foregoing reasons, we affirm Issa's convictions and the denial of his

motion for new trial.

*Judgment affirmed. Reese and Bethel, JJ., concur.*

---

[72] *Maurer*, 320 Ga. App. at 595 (6) (g); *see Mobley*, 296 Ga. at 881 (holding that trial counsel did not render ineffective assistance by positing mutual combat defense as an alternative in murder case, even if doing so might have impaired principal defense of justification); *State v. Reynolds*, 332 Ga. App. 818, 822-23 (775 SE2d 187) (2015) (holding that trial counsel's strategy of explaining that defendant was at the scene of crime to deal drugs rather than commit robbery was not unreasonable).