A93A1960. GRIFFIN v. THE STATE.
(441 SE2d 897)

SMITH, Judge.

Nina Simone Griffin and Jamie A. Bramblett were tried jointly for a violation and attempted violation, respectively, of the Georgia Controlled Substances Act. Bramblett was granted a directed verdict

on the charge against him, and Griffin was convicted as a repeat offender of possession of cocaine with intent to distribute, OCGA § 16-13-30 (b), (d). Griffin received a life sentence. She appeals following the denial of her motion for new trial.

Griffin enumerates as error the denial of her motion for directed verdict at the close of the State's case, as well as the sufficiency of the evidence to convict under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). That same standard guides both enumerations, *Burden v. State*, 187 Ga. App. 778 (1) (371 SE2d 410) (1988), and both enumerations put at issue the sufficiency of the entirety of the evidence offered at trial by the parties. See *Causey v. State*, 154 Ga. App. 76, 77 (1) (267 SE2d 475) (1980). Griffin's enumerations are therefore reviewed together.

The State's evidence, viewed in a light favorable to the verdict, shows that Officer Michael Leonard of the Dalton Police Department observed a vehicle driven by co-defendant Bramblett as it approached an apartment in the "New Town" area of Dalton, at which several persons were present on a balcony. Someone from the residence asked Bramblett what he needed, then told him to "take a lap," meaning to drive around the block and return. Officer Leonard testified that he heard this phrase "constantly" while on patrol in the "New Town" area. The vehicle left and returned a moment later. Griffin then left the residence and entered the vehicle, and Bramblett drove away.

Officer Leonard, suspecting a sale of crack cocaine was taking place, radioed Officer Gary Keener, who was in a marked patrol unit. Leonard asked Keener to stop the vehicle. While Keener spoke with Bramblett through the driver's side window, he observed a cellophane wrapper in Griffin's right hand. Keener knew the reason he was directed to stop the vehicle and testified that he was aware that cocaine is commonly packaged in cellophane wrappers. According to Keener, Griffin was attempting to conceal the wrapper by holding it down near her leg. Keener then observed Griffin drop the wrapper on the floorboard. Fellow officer James Rogers then approached the right side of the vehicle, and Keener told him to check Griffin's right hand. At the time, Griffin's right hand was between the seat and the car door. Upon request, Griffin raised her right hand, which was empty. Rogers then opened the door and found a cigarette pack with four rocks of crack cocaine in it.

The State also introduced a prior arrest for possession of cocaine with intent to distribute. Sergeant Tony Gibson of the Dalton Police Department testified that on that prior occasion he had received information that Griffin was in the company of two men from Atlanta in possession of a large quantity of cocaine. Griffin was believed by officers to be a crack cocaine dealer in the New Town area. The police obtained a description of the vehicle used by Griffin and the two men.

They located that vehicle and arrested the three suspects. All occupants had cocaine on their persons and in "all three areas of the car." Gibson testified that Griffin was found with six or seven rocks, individually packaged, on her person. In all, approximately 100 rocks were seized. Gibson confirmed that during their brief surveillance of Griffin and the other men on that prior occasion, the police saw no drug transactions take place. Griffin pled guilty to possession of cocaine in connection with that incident.

Gibson also testified that plastic jewelry bags were the most common method of packaging crack cocaine for resale in 1989 when the prior arrest was made, but that dealers' methods change over time to evade law enforcement. Gibson was then asked whether a cellophane cigarette pack would distinguish a mere user of drugs from a distributor. Gibson replied that "it's kind of confusing to give you a pat answer on that because most of your street level crack dealers are also crack users. And they might have three rocks to sell two to get enough money to pay their person, to have one for theirself. . . . So, you can only have three or four rocks on you and still be a dealer." Defense counsel replied: "Okay. And then you could still have three or four rocks on you and be just a simple user?" Gibson responded affirmatively, and added that there is no way to tell the difference "unless you have some type of, you know, other intelligence or investigation such as, you know, a buy, or something like that, to go along with it."

At the close of the evidence, the trial court again denied Griffin's motion for directed verdict on the question of intent to distribute, but granted Bramblett's renewed motion as to the charge against him. The court acknowledged that it was highly suspicious for Bramblett to have been driving through the New Town area on the evening in question. Nevertheless, the trial court concluded that the evidence was insufficient to convict Bramblett of attempting to purchase cocaine from Griffin.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. The evidence here was clearly sufficient to authorize the jury to convict Griffin of the lesser included offense of possession of cocaine under the standard of *Jackson v. Virginia*, supra.

Assuming, however, that the evidence was insufficient to authorize the jury to infer, to the exclusion of all other reasonable hypotheses, that Griffin and Bramblett contemplated a drug *transaction*, the evidence presented would likewise appear to preclude a conviction against Griffin for intent to distribute the cocaine in her possession. A State's witness conceded that the quantity of cocaine possessed by Griffin and the manner in which it was packaged was not inconsistent

with mere possession for personal use. Compare *Bean v. State*, 204 Ga. App. 242, 243 (2) (418 SE2d 798) (1992) (two officers testified "that mere users usually did not possess as much cocaine as was found in the tissue," i.e., four pieces of crack cocaine and some crumbs); *Davis v. State*, 200 Ga. App. 44, 45-46 (2) (406 SE2d 555) (1991) (quantity of cocaine sufficient to distinguish distributor from user is not necessarily within layman's knowledge). The jury clearly was not authorized to convict Griffin of intent to distribute the four rocks of cocaine at issue based *solely* on the quantity of cocaine possessed on a prior occasion.

Despite the trial court's grant of directed verdict in favor of Bramblett, the question remains as to whether the jury could have eliminated other hypotheses as unreasonable and concluded beyond a reasonable doubt that Griffin intended to distribute to Bramblett the cocaine in her possession. See generally *Parker v. Mooneyham*, 256 Ga. 334 (349 SE2d 182) (1986). We find the evidence sufficient under OCGA § 24-4-6, and affirm.

An examination of the co-defendants' testimony shows that Bramblett, who is white, was driving in a predominantly black neighborhood at 1:30 a.m. when persons he termed "a bunch of blacks" told him to pull over. According to Bramblett, since he did not know why he was summoned, he pulled over and asked: "What do you-all want?" Coincidentally, Griffin testified that she happened to be playing cards at the apartment of a friend and saw Bramblett parked outside as she was leaving the apartment to buy cigarettes. Griffin and Bramblett both testified that they had known each other for a long time through Griffin's brother and/or Bramblett's sister. Bramblett testified that he offered to take Griffin to the Favorite Market to purchase the cigarettes provided she walked back herself. According to Bramblett, Griffin asked him to circle the block while she got her purse. Griffin, however, testified that she did not see Bramblett until he had already circled the block, and that she was already headed to the store when she first saw him. Bramblett also corroborated Officer Keener's testimony to the effect that Griffin was holding the contraband just before Officer Rogers opened the car door and discovered it.

We find that the jury was authorized to conclude, to the exclusion of any other hypothesis within reason, that Griffin intended to distribute the cocaine in her possession on the night in question. *Horton v. State*, 194 Ga. App. 797, 798-799 (1) (b) (392 SE2d 259) (1990).

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED MARCH 11, 1994.

*Michael A. Corbin*, for appellant.
*Jack O. Partain III*, District Attorney, *Kermit N. McManus*, As-

*sistant District Attorney*, for appellee.