## A01A0255. STEPHENS v. THE STATE.
### (545 SE2d 325)

MIKELL, Judge.

Timothy Stephens was convicted after a bench trial of nine counts of misdemeanor cruelty to animals (OCGA § 16-12-4).[1] Stephens was sentenced to serve six months for each count, 135 days in confinement and the remainder on probation. As a condition of probation, Stephens was forbidden from owning any dogs. On appeal, Stephens challenges the sufficiency of the evidence and the denial of his motion for a new trial. He also contends that the trial court erred by depriving him of possession of the dogs that the court found he did not treat cruelly. We affirm.

On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict.[2] We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[3] This same standard applies to our review of the trial court's denial of Stephens' motion for new trial.[4] The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

So viewed, the evidence shows that on January 18, 2000, after receiving several complaints of barking dogs and of an odor coming from Stephens' backyard, Officer Harold Race of Cobb County Animal Control visited Stephens' home. Stephens was not home, but Officer Race observed the dogs from Stephens' neighbor's backyard. Officer Race saw several pit bull dogs chained around Stephens' backyard. He testified: "The dogs were in puddles of water probably approximately an inch and a half to two inches deep. The dog houses were full of mud and water. The dogs had no way of getting out of the mud and water."

Officer Race reported his findings to his supervisor, who instructed him to contact Stephens to obtain permission to inspect the dogs and their living conditions. On the following day, with Ste-

---

[1] Stephens was charged with 17 counts of cruelty to animals based on his abuse of 17 dogs that were confiscated from his backyard.

[2] *Shabazz v. State*, 229 Ga. App. 465 (1) (494 SE2d 257) (1997).

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Griffin v. State*, 212 Ga. App. 411, 412 (441 SE2d 897) (1994).

[5] *Barber v. State*, 235 Ga. App. 170 (509 SE2d 93) (1998).

phens' permission, Officer Race returned to Stephens' home, accompanied by several other officers. Officer Race recalled that it had rained during the previous days and that the temperature was in the thirties. Chained in Stephens' backyard were sixteen pit bull dogs and one boxer, all of which are extremely short-haired dogs, making them more susceptible to the cold. The dogs were living in feces and urine-soaked soil. Some of the dogs had houses, while others lived under boards that were propped against the fence. Officer Race testified that the dogs had no dry place upon which to lie, nor could they escape the cold. He opined that the environment in which the dogs lived was not healthy for any type of animal, especially given the weather.

While in Stephens' backyard, the officers also located a pit that Officer Race opined had been used for pit bull fighting. Officer Race testified that because pit bull dogs are very strong, boards are used to reinforce the pit so that the dogs can be contained when they are fighting. The boards used to reinforce this pit were splattered with bloodstains, and there were bloodstains on the carpet in the pit. The officers also located bite sticks, which are used to unlock a pit bull's jaws after it has bitten another animal while fighting. A first aid kit was also found in the pit area. The license plate on Stephens' truck displayed two pit bull dogs fighting and read "to death do us part." Finally, some of the dogs had abrasions and neck scars that appeared to be healing.

Officer Race explained that they confiscated all of the dogs because of the conditions they were forced to endure. The dogs lived in extremely muddy conditions in very cold temperatures. Officer Race testified that dog excrement and urine had mixed with the mud. Because the dogs lived in the mud and water, the water they drank was probably contaminated. Three other officers testified consistently with Officer Race.[6] More than 100 pictures of the dogs, the pit, and the surrounding scene were admitted into evidence.

1. Stephens argues that the evidence was insufficient to sustain his conviction for cruelty to animals. In pertinent part, OCGA § 16-12-4 provides that a person commits the offense of cruelty to animals when he or she causes death, or unjustifiable physical pain or suffering, to any animal by an act, an omission, or wilful neglect. In this case, there is evidence to support the trial court's finding that the dogs were subjected to unjustifiable physical pain and suffering.

The evidence showed that the conditions were wet and the temperature was in the thirties. The dogs lived in metal drums, plastic

---

[6] Officer Joseph Pacpaco testified that he had visited Stephens' home on March 31, 1999. He observed several pit bull dogs chained to the fence, but found no evidence of unsanitary conditions.

igloos, or under boards, and none of them had adequate shelter from the elements or bedding. Also, most of them lived in what the trial court called a "virtual sea of mud."

Though Stephens has not been charged with dogfighting,[7] there was strong circumstantial evidence that he bred the dogs for this purpose. The evidence shows that when pit bull dogs engage in combat, they will fight to the death. The officers found a pit that was reinforced with bloodstained boards, bloodstains on the carpet, bite sticks, and a first aid kit in the pit area. Several of the animals had neck scars and other abrasions, consistent with dogfighting. Finally, Stephens' license plate supports the sport of dogfighting.

In light of the evidence in this case, any rational trier of fact could have found the elements of cruelty to animals beyond a reasonable doubt.[8] Therefore, we affirm Stephens' convictions for cruelty to animals and the denial of his motion for a new trial.

2. While in the custody of Cobb County Animal Control, the dog referenced in Count 1 of the accusation gave birth to nine puppies. As a condition of Stephens' probation, the trial court forbade Stephens to own any dogs or live at a residence where dogs were present. In his remaining enumeration of error, Stephens argues that the trial court erred by depriving him of the nine puppies, and the eight dogs that the court found that he did not treat cruelly. We disagree.

"A trial judge has broad discretion in imposing conditions of probation, and in the absence of express authority to the contrary, there is no reason why any reasonable condition of probation should not be approved."[9] Furthermore, "[t]here is a presumption that a sentence was correctly imposed, and the burden of showing that a sentence was not correctly imposed is with the party who asserts its impropriety."[10] Stephens has failed to carry this burden, and his enumeration is without merit.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JANUARY 29, 2001.

*Tina M. Smith*, for appellant.

---

[7] A person commits the offense of dogfighting when he causes or allows a dog to fight another dog for sport or gaming purposes or maintains or operates any event at which dogs are allowed or encouraged to fight one another. OCGA § 16-12-37 (a).

[8] See *Jackson v. Virginia*, supra.

[9] *Dudley v. State*, 242 Ga. App. 53, 57 (3) (527 SE2d 912) (2000).

[10] (Punctuation omitted.) *Sirmans v. State*, 244 Ga. App. 252, 257 (534 SE2d 862) (2000).

*Barry E. Morgan, Solicitor, Thomas E. Griner, Assistant Solicitor*, for appellee.