**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 8, 2014**

# In the Court of Appeals of Georgia

A14A0268. SPENCER v. THE STATE.                                    DO-009

DOYLE, Presiding Judge.

After a jury trial, Anthony Spencer was convicted of two counts of armed robbery[1] and aggravated assault.[2] Following the denial of his motion for new trial, Spencer appeals, arguing that the trial court erred by (1) finding that his statements to police were voluntary; (2) refusing to grant his request to instruct the jury as to the lesser included offense of robbery by intimidation; and (3) allowing the State to treat his co-conspirator as a hostile witness. For the reasons that follow, we affirm.

On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-21 (a) (2).

determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[3] This same standard applies to our review of the trial court's denial of [the defendant's] motion for new trial. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

So viewed, the evidence shows that late in the evening on April 5, 2010, Spencer and two co-conspirators, Maggie Denham and Devin James, decided to rob a local Asian restaurant, and Denham called requesting delivery of over $50 of food, including egg rolls. The delivery was to be made to an apartment, and two employees of the restaurant drove to the complex to deliver the food. The apartment was located on the terrace level of the building, requiring the employees to walk down a flight of stairs to reach the unit. Denham opened the door, and she asked the employees to wait for her boyfriend, who was coming to the apartment with money.

After waiting for some time, the employees became suspicious and returned back up the stairs, where they were met by Spencer, Denham, and James, who brandished a handgun, which he pointed at the employees, and demanded the food,

---

[3] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[4] (Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

2

their wallets, and their cell phones. While Denham removed one of the employee's wallets from his pants, James hit him on the head with the handgun, causing the employee to fall, at which point the three beat and kicked him. Spencer called out that someone was coming, and the three fled to a nearby apartment where a friend lived, who awoke her stepfather. They convinced the friend's stepfather to give them a ride out of the complex because they had been attacked by someone.

Prior to their escape, the employees called 911, and an officer who happened to be in the vicinity of the complex interviewed the employees about the incident and arranged to secure the only exit from the complex. The vehicle carrying Spencer, Denham, and James was stopped at the exit when the officer stationed there recognized Denham from the description provided by the employees and noticed the order of Asian food in the vehicle.

The officers allowed the driver to leave and placed the three suspects in separate patrol cars. The employees identified Spencer and the two others as participants in the crime, and officers discovered a handgun and one of the employee's cellphones in the vehicle. The officers arrested James and Spencer after reading *Miranda*[5] warnings to the men, and James admitted that the three planned and

---

[5] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

3

participated in the robbery.[6] Officers also discovered in Spencer's pants pocket an egg roll. Spencer also admitted that he knew the robbery was going to occur, and he saw Denham give James the weapon prior to the incident. Spencer stated that he was behind James during the robbery, and he grabbed the food when James dropped it as they fled from the scene.

Prior to Spencer's trial, James and Denham pleaded guilty. In his plea colloquy, James stated that Spencer did not attack anyone and was just "around." As part of her plea, Denham agreed to testify against Spencer if he proceeded to trial. None of the three co-conspirators had ever been arrested prior to the incident.

After trial, the jury returned guilty verdicts as to the two armed robbery counts, but the jury acquitted Spencer of aggravated assault of the employee James hit on the head. The court sentenced Spencer to twenty years with ten to serve.

1. Spencer argues that the trial court erred by finding that his custodial statement was voluntary. Specifically, Spencer contends that he was 18 years old, had a tenth grade education, no prior experience with law enforcement, was not allowed to speak with his parents prior to the interview, was interviewed in the middle of the

---

[6] Denham did not provide police with an interview at the scene.

4

night, and had smoked marijuana prior to the incident, rendering clearly erroneous the trial court's determination that his custodial statement was admissible. We disagree.

In deciding the admissibility of a statement during a *Jackson-Denno*[7] hearing, the trial court must consider the totality of the circumstances and must determine the admissibility of the statement under the preponderance of the evidence standard. Unless the factual and credibility findings of the trial court are clearly erroneous, the trial court's decision on admissibility will be upheld on appeal.[8]

The record shows that officers interviewed Spencer after arresting him at the crime scene; the interview occurred at the police station at approximately 2:20 a.m. on the morning of April 6 after the incident earlier that night. Prior to conducting the interview, the officer read Spencer his *Miranda* rights and provided him a written waiver of rights form; the officer asked Spencer whether he had ingested any drugs or alcohol, and he responded that he had smoked marijuana at approximately 7:00 p.m. earlier that evening (about 7 hours prior to the interview). Spencer stated that he was no longer under the influence at the time of the interview: "I'm fine; we can continue." The interview lasted about 20 minutes, and the officer, who was

---

[7] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[8] (Punctuation omitted.) *Norton v. State*, 293 Ga. 332, 334 (2) (745 SE2d 630) (2013), quoting *Jones v. State*, 285 Ga. 328, 329 (2) (676 SE2d 225) (2009).

experienced with individuals under the influence, testified that Spencer did not appear impaired.

Spencer contends that his impairment from ingesting marijuana establishes that he was not capable of knowingly and voluntarily waiving his right to silence. He contends that, for instance, the law's treatment of marijuana intoxication as evidence of per se impairment of ability to drive shows that it was clear error on the part of the trial court to determine that Spencer was capable of consenting to the interview while his faculties were similarly affected. "The mere fact that [Spencer] may have been somewhat intoxicated at the time of the interview does not automatically render evidence thereof inadmissible."[9] Although another trial court weighing the circumstances surrounding Spencer's custodial statements may have found that he did not knowingly and voluntarily consent, here, "[t]he trial court was faced with conflicting evidence[] and determined that [Spencer] made his statement knowingly and voluntarily; there was evidence to support this determination; and there is no reversible error in the court's denial of the motion to suppress."[10]

_____

[9] *Norton*, 293 Ga. at 335 (2).

[10] Id. See also *Ellis v. State*, 274 Ga. 852, 853 (2) (561 SE2d 117) (2002) ("Even considering that [the defendant] had achieved only a sixth-grade education, and his ability to read [was] limited, the trial court's ruling [that he voluntarily and

6

2. Spencer also argues that the trial court erred by refusing his request to charge the jury on the lesser included charge of robbery by intimidation. We disagree.

Pretermitting whether Spencer was required to file a written request to charge, Spencer argued throughout the trial that he was merely present for the robbery and did not participate. Thus, the trial court correctly denied the request because "when, as in this case, there is no evidence that the robbery was committed without the use of a gun, the defendant is not entitled to a jury charge on the lesser included offense of robbery by intimidation."[11] Spencer contends, however, that because the jury acquitted him of the aggravated assault charge that was based on use of a weapon, his request was supported by the evidence. But this presupposes that the jury acquitted him because it believed a weapon was not involved, rather than because it believed that the aggravated assault as charged did not occur or did not constitute an aggravated assault.[12]

_____

knowingly waived his right to silence] was not clearly erroneous.").

[11] (Punctuation omitted.) *Hester v. State*, 304 Ga. App. 441, 444 (4) (696 SE2d 427) (2010), quoting *Hillman v. State*, 296 Ga. App. 310, 316 (6) (674 SE2d 370) (2009).

[12] The indictment charged Spencer with assaulting the victim with a deadly weapon, the gun, to injure the victim by hitting him on the head.

3. Finally, Spencer argues that the trial court erred by allowing the State to treat Denham as a hostile witness. We disagree.

During her plea, Denham agreed to testify on behalf of the State at Spencer's trial. Prior to her testimony, the State called Denham before the trial court to determine whether she would testify pursuant to the plea agreement, to which she responded affirmatively. Nevertheless, upon being questioned before the jury, Denham attempted to invoke the Fifth Amendment right to remain silent, and the State reminded Denham that she had waived her right, but instead of responding, she stated she did not remember where she was on the night in question. At that point, the State requested that it be allowed to treat Denham as a hostile witness. Spencer did not object to the request.

"A trial court has discretion to permit leading questions on direct examination when a witness is reluctant, hostile, or overly nervous."[13] "It would be a rare case in which the trial court's exercise of discretion on this issue would warrant reversal."[14]

---

[13] *Culler v. State*, 277 Ga. 717, 721 (5) (594 SE2d 631) (2004), citing *Hayes v. State*, 268 Ga. 809, 812-813 (6) (493 SE2d 169) (1997). See also former OCGA § 24-9-63 (2012), which is now codified in OCGA § 24-6-611 (c), enacted by Ga. L. 2011, p. 99, § 2/HB 24.

[14] *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993).

Although Spencer cites *Hill v. State*,[15] in support of his contention that the State should have been required to refresh Denham's recollection prior to treating her as a hostile witness,[16] that case was addressing impeachment of a witness with prior statements, and it is not directly on point. Moreover, Denham did not simply state that she could not remember, she first sought protection from testifying from the Fifth Amendment, which she was prevented from invoking under her plea agreement. Accordingly, we discern no abuse of discretion on the part of the trial court.

*Judgment affirmed. Miller and Dillard, JJ., concur.*

---

[15] 250 Ga. App. 897 (553 SE2d 289) (2001).

[16] See id. at 902 (1).