308 Ga. 515
FINAL COPY

S20A0158. COLLINS v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant Tommy Collins was convicted of felony murder in connection with the stabbing death of 14-year-old Rueben Hand. Appellant's only argument on appeal is that the trial court plainly erred when it gave the jury the State's requested instruction on "revenge for a prior wrong." Seeing no error, much less plain error, we affirm.[1]

---

[1] Hand was killed on January 1, 2011. On April 1, 2011, a Fulton County grand jury indicted Appellant for malice murder, felony murder predicated on aggravated assault, and three counts of aggravated assault (one for stabbing Hand, one for stabbing at Diamante Drake, and one for stabbing at Edmon Odem). Appellant was tried from April 9 to 12, 2013; the jury found him not guilty of malice murder and the aggravated assault counts against Drake and Odem, but guilty of felony murder and the predicate aggravated assault count against Hand. The trial court sentenced Appellant to serve life in prison for felony murder; the aggravated assault count merged. Through his trial counsel, Appellant filed a timely motion for new trial, which he then amended three times representing himself and once more with new counsel. Appellant represented himself at a hearing on the motion on July 3, 2018. On November 5, 2018, the trial court denied the motion. Appellant then filed a timely pro se notice of appeal, which was amended by his current counsel on April 23, 2019. The case was docketed in this Court for the term beginning in December 2019 and submitted for a decision on the briefs.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On the night of December 31, 2010 — New Year's Eve — teenage friends Hand, Diamante Drake, and Edmon Odem went to Underground Atlanta near the Five Points MARTA station to watch the Peach Drop at midnight. Appellant and his fiancée also were there to see the Peach Drop.

At about 11:37 p.m., Appellant got into a fight with a group of individuals outside the MARTA station. Appellant believed that during the fight, someone in the group stole his cell phone, $150 in cash, and his bracelet, and he thought that Hand, Drake, and Odem were part of the group.[2] Responding police officers broke up the fight and questioned Hand, Drake, and Odem before letting them leave to see the Peach Drop. Appellant's fiancée went home at this point.

---

[2] Drake and Odem testified that they were not part of the group that fought with Appellant, although they were standing nearby when the fight occurred. However, the jury was also shown a surveillance video recording from the MARTA station at the time of the fight, and a MARTA police officer testified that Appellant could be seen on the recording fighting with Hand, Drake, and Odem.

After the Peach Drop, Hand, Drake, and Odem walked back toward the MARTA station to go home. On the way, they ran into Appellant, who accused them of taking his cell phone. Appellant and Hand argued briefly, and Appellant threatened that he could have the three teenagers killed. The three of them then walked away from Appellant, who — as shown on surveillance video – followed them into the MARTA station and down an escalator to the train platform around 12:14 a.m. When they reached the platform, Drake and Odem no longer saw Appellant, but shortly thereafter, he came around a corner, ran toward Hand, Drake, and Odem, and started swinging a knife at them. Drake dodged the knife and pushed Odem out of the way; Hand was facing away from Appellant and did not see him approach, and Appellant stabbed Hand in the neck. Hand then ran toward nearby police officers, but he collapsed and died at the scene. Appellant fled the scene, got on a train, and left. Drake and Odem later identified Appellant in photo lineups as the man who stabbed Hand.

Around 1:00 a.m., Appellant's friend Ryan Carree went to

check on Appellant at his apartment because Carree could not reach him by phone; Appellant was at his apartment when Carree arrived. Appellant told Carree that he had been "jumped" and the assailants stole his cell phone. Appellant also told Carree that he "retaliated against the boy who stole his cell phone" by stabbing the boy.

On January 3, Appellant was arrested and then interviewed by police officers; he did not provide any information to the officers about Hand's stabbing at that time. On January 14, after Appellant contacted the officers, he was interviewed a second time; this interview was video-recorded, and the recording was played for the jury at trial. Appellant told the officers the following. After the initial fight near the MARTA station, Appellant went to a friend's house to borrow $10 to get home. When he returned to the area near the station, the men with whom he had fought came up to him and tried to take his watch. After about five minutes of talking to the men, Appellant walked into the station and went down the stairs to get on the train, and the men followed him. After they got to the train platform, one of the men said, "Let's get this dude," and

reached into his pocket. Appellant then pulled out a small knife, started stabbing by the man's collar bone, and "hit him one time." Appellant then got on a train and left. He later heard people saying that "a little kid just got killed," and he knew it was the person he had stabbed. Appellant did not mean to kill "that kid" and "just wanted to get away so they'd leave him alone." Appellant identified himself in a still photograph taken from the surveillance video of the scene of the fatal stabbing.

At trial, the medical examiner who performed Hand's autopsy testified that Hand died from a sharp force injury to the right side of his neck that nearly transected his jugular vein and a major artery. The injuries were consistent with someone stabbing Hand from behind.

Appellant testified at trial, claiming that he stabbed someone during the initial fight near the MARTA station but he was not the person who stabbed Hand later inside the station. Appellant said that at the time he admitted to the police that he stabbed Hand, he did not realize that Hand's stabbing was a separate incident from

the initial fight; that he had not gone looking for anyone after the fight; and that he had not stabbed anyone inside the MARTA station.

Appellant does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of felony murder. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant contends that the trial court plainly erred by giving the jury the State's requested instruction on "revenge for a prior wrong," which essentially tracked the pattern jury instruction on that issue. See Georgia Suggested Pattern Jury Instructions, Vol.

II: Criminal Cases, § 3.16.30 ("Revenge for Prior Wrong"). See also

*Hornbuckle v. State*, 300 Ga. 750, 753-754 (797 SE2d 113) (2017)

(explaining that this "pattern instruction is an accurate statement

of the law"). During the charge conference, the trial court agreed to

give the instruction, explaining that it appeared "to be within the

scope of the evidence as a part of the charges on murder." Appellant's

counsel objected on the ground that Appellant was not requesting

instructions on self-defense or voluntary manslaughter.

After closing arguments, the court gave the final charge to the

jury, including the following instruction:

> Ladies and gentlemen, I charge you that one who is not the aggressor is not required to retreat before being justified in using such force as is necessary for personal defense or in using force that is likely to cause death or great bodily harm if one reasonably believes such force is necessary to prevent death or great bodily injury to oneself or to a third person or to prevent the commission of a [forcible] felony. However, while a person has a right to defend himself, a person is not justified in deliberately assaulting another person solely in revenge for a past or previous wrong, regardless of how serious the past or previous wrong might have been, when the episode involving the previous wrong has ended. Such person is not justified in acting out of revenge by deliberately seeking out and assaulting the alleged wrongdoer.

If you find from the evidence in this case that the defendant used force against the alleged victim named in this indictment in order to prevent an impending wrong that the defendant reasonably believed was about to be committed by such other person and that the defendant reasonably believed that such force was necessary in order to prevent such impending wrong, death or great bodily injury to the defendant, or to prevent the commission of a [forcible] felony, then that use of force would be justified, and it would be your duty to acquit the defendant.

On the other hand, if you believe beyond a reasonable doubt from the evidence in this case that the defendant used force against the alleged victim named in the indictment in the way and manner alleged in the indictment, for the sole purpose of avenging a past or previous wrong, regardless of how serious such previous wrong may have been, and not for the purpose of preventing an impending wrong, death or great bodily injury to the defendant or to prevent the commission of a [forcible] felony, then you would be authorized to convict the defendant.

At the conclusion of the jury charge, the trial court asked, "Are there any objections or exceptions to the charge . . . on behalf of the defense?" Appellant's counsel replied, "No, your honor." Because an objection made at the charge conference does not by itself preserve an objection to an instruction as subsequently given, we review Appellant's claim only for plain error. See *White v. State*, 291 Ga. 7,

8 (727 SE2d 109) (2012). See also OCGA § 17-8-58 (b); *State v. Kelly*, 290 Ga. 29, 33 (718 SE2d 232) (2011). Appellant cannot establish error, much less plain error.

"'[T]o authorize a requested jury instruction, there need only be slight evidence to support the theory of the charge,'" and the necessary evidence may be presented by the State, the defendant, or both. *McClure v. State*, 306 Ga. 856, 863 (834 SE2d 96) (2019) (citation omitted). The evidence presented in this case authorized the "revenge for a prior wrong" instruction: Appellant told the police during his second interview that he was defending himself when he stabbed Hand once after Hand supposedly said, "Let's get this dude," and reached into his pocket; Hand's friends identified Appellant as Hand's assailant; before the stabbing, Appellant accused Hand, Drake, and Odem of taking his cell phone after a fight in which he thought the teenagers were involved; Appellant then followed the three of them down to the train platform before attacking them; and Appellant admitted to his friend that he "retaliated against the boy who stole his cell phone" by stabbing the boy. "Because some

evidence support[ed] the theory that [Appellant] may have [stabbed Hand] out of revenge for the prior incident between" them, there was "no error from the giving of this charge." *Smith v. State*, 301 Ga. 79, 83 (799 SE2d 762) (2017). See also *Hornbuckle*, 300 Ga. at 753-754 (holding that the revenge instruction was properly given because "some evidence was presented that [the defendant] acted out of anger or vengefulness at past wrongs rather than from a reasonable apprehension of harm from the victim").

Appellant argues that the challenged instruction undermined his misidentification defense, which he asserts was his only defense at trial. But as just discussed, there was evidence of revenge to support the charge. Moreover, misidentification was not Appellant's sole defense, as his counsel argued in closing that the State had to prove not only the identity of the perpetrator but also his intent, saying, "If you decide that [Appellant] was there on the evidence and he lashed out . . . , you have to decide that beyond a reasonable doubt at that moment, he had the specific intent to take the life of Mr. Hand." And the trial court gave the jury instructions on the State's

burden of proving Appellant's intent as well as the defense of identity.

Finally, Appellant claims that the challenged instruction constituted an improper judicial comment on his guilt. See OCGA § 17-8-57 (a). But we have held that similar jury instruction language — "'[a] person is not justified in revenge by deliberately seeking out and assaulting the alleged wrongdoer'" — was not an improper comment on the defendant's guilt. *Rector v. State*, 285 Ga. 714, 716 (681 SE2d 157) (2009). We see no material difference in the legally accurate language of the pattern instruction given in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 20, 2020.
Murder. Fulton Superior Court. Before Judge Russell.
*Long D. Vo*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.