**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 3, 2023**

# In the Court of Appeals of Georgia

A22A1697. ANTONIO CECIL MAXWELL v. THE STATE.

LAND, Judge.

After a jury trial, Antonio Cecil Maxwell was convicted of two counts of rape, two counts of false imprisonment, criminal attempt to commit rape, aggravated sodomy, and aggravated assault. Maxwell appeals from the denial of his motion for new trial, arguing that the trial court erred by (1) denying his motion to suppress his custodial statement; (2) denying his motion for severance of the offenses; and (3) instructing the jury on the State's uncalled witness charge. We disagree and affirm.

"On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict." (Citation omitted.) *Stephens v. State*, 247 Ga. App. 719, 719 (545 SE2d 325) (2001). We neither weigh the evidence nor judge witness credibility, but determine only "whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2D 560) (1979).

So viewed, the record shows that, in July 2014, Maxwell met the first victim, A. V., on a bus, and the two agreed to have drinks together. Maxwell told A.V. that he had left his ID at his house, and the two went to a house that appeared to be abandoned to retrieve it. When A. V. asked to leave, Maxwell pulled her down onto a bed and removed her clothes. A. V., who was married at the time, told Maxwell to stop and let her go, but he grabbed her by the throat and raped her. Maxwell followed A.V. back to the bus stop then called her while she was on the bus to "make sure" that she was not going to "say anything." A. V. immediately disclosed to her friend that she had been raped by someone named Tony. The friend called the police and A. V. gave a description of Maxwell. A. V. then went to the hospital, where she received a sexual assault examination. No arrests were made in connection with A. V.'s sexual assault, and it was assigned to the cold case unit.

In March 2017, Maxwell and a second victim, J. I., met up at a McDonald's and then went to J. I.'s apartment to smoke marijuana. Maxwell and J. I went to her bedroom; Maxwell asked J. I. to perform oral sex and J. I., who was in a relationship

2

at the time, refused. Maxwell then pulled his pants down, pushed J. I. down onto the bed, and began "grinding" on top of her while she cried and told him no. J. I. was able to push Maxwell off of her and told him to leave. Maxwell told J. I. that "nobody had to know" what had happened. J. I. reported the assault to police that same day and picked Maxwell out of a photo lineup. Although Maxwell was questioned by police in connection with the incident, he was not arrested.

Two months later, in May 2017, Maxwell met a third victim, C. L., at a bus stop. The two exchanged phone numbers and some time later made plans to meet at a McDonald's to talk. When C. L. arrived, Maxwell told her that he needed to change his shoes at his grandmother's house, and the two went to the same abandoned house where Maxwell had assaulted A.V. In one of the bedrooms, Maxwell told C. L. that he wanted "to spend more time with [her]." C. L., who was married at the time, told Maxwell that she was not interested and attempted to leave. Maxwell told C. L. that she wasn't "goin nowhere," slapped her face, choked her, and threw her onto the bed. He then removed and hid her clothes, took her phone, raped her, and forced her to perform oral sex. The next morning, Maxwell had C. L. call her husband's aunt and reassure her that she was okay. He then took C. L. to the aunt's house. Thirty minutes later, Maxwell called C. L. C. L. told the aunt what had happened, reported the rape

3

to police, and identified Maxwell as her assailant by name. C. L. also received a sexual assault examination kit at the hospital. Maxwell was taken into custody and on May 31, 2017, was interviewed by a special victim's unit investigator with the Savannah Police Department in connection with C. L.'s rape.

After Maxwell was taken into custody, he was identified through CODIS as a DNA match to A. V.'s sexual assault examination kit. As a result of the CODIS match, a different special victim's unit investigator, Adina Ripley, was assigned to do a follow-up investigation of A. V.'s case. In January 2018, Ripley interviewed A. V., learned that Maxwell was also a suspect in J. I.'s sexual assault, and interviewed J. I. regarding her assault.

On February 7, 2018, while Maxwell was in custody for charges related to C. L.'s rape and represented by counsel for those charges, Ripley questioned Maxwell about both A. V. and J. I. At the beginning of the interview, Ripley informed Maxwell that she did not wish to speak with him about the charges for which he was incarcerated. Maxwell was advised of his constitutional rights, and he agreed to speak with Ripley. Ripley showed Maxwell four photographs of A.V. and asked whether Maxwell knew her. Maxwell replied that he did not. Ripley then showed Maxwell two photographs of J. I. and asked if Maxwell had ever met the woman. Maxwell

replied that he had not. Ripley then asked Maxwell whether he had ever met the two women, had a relationship with them, or had sex with them. Maxwell again stated that he had not. The interview then concluded. Ripley also reviewed data from Maxwell's cell phone and discovered four audio files from April 2017 where Maxwell had recorded himself saying "kidnap a woman and tie her up."

On February 21, 2018, Maxwell was indicted for two counts of rape , three counts of false imprisonment, and one count each of criminal attempt to commit rape, aggravated sodomy, and aggravated assault. Maxwell filed a motion for severance of the offenses and a motion to suppress the statements he made to Ripley on February 7, 2018. The trial court denied Maxwell's motion to suppress because Maxwell had not been charged with the alleged offenses against A. V. or J. I. at the time of the interview, and thus, his Sixth Amendment right to counsel with respect to those offenses had not yet attached, and because Maxwell gave the statements freely, knowingly, and voluntarily, without any hope of benefit. The trial court also denied Maxwell's motion to sever, finding that the offenses showed a common motive, plan, or scheme; that evidence in each case would be admissible in the trial of the others pursuant to OCGA §§ 24-4-413 and 24-4-403; and that the jury would be able to fairly and intelligently judge each of the offenses.

During the jury trial, the State requested the jury be instructed that it was not reasonable to infer from the fact that there were uncalled witnesses that the uncalled witnesses would have exonerated Maxwell. The trial court stated that it did not intend to give an "uncalled witness" charge unless the defense made an argument regarding such uncalled witnesses. Defense counsel confirmed that he would be making an argument during closing about uncalled witnesses, but objected to the charge, stating "it is confusing and could be misleading to the jury. But I understand it's the law." During closing arguments, defense counsel stated

> you're gonna hear a jury charge on witnesses not called by the State. Well, here's one, Detective Nicole Khalis. You heard me on cross ask about her to [A.V.], right. And she was the lead detective on that case. Never called here as a witness. She's on the witness list . . . And we never heard from Detective Nicole Khalis and you need to ask yourself why not. Why didn't they want you to hear from her[?]

After closing arguments, the trial court gave the following charge to the jury:

> I charge you that it is not reasonable to infer that the State's failure to produce all available witnesses means that their testimony would not have been inculpatory or would have been exculpatory. For a variety of reasons the State might choose to call only some of the witnesses at trial even though others, if called, might have given corroborating testimony against the defendant. It is not reasonable to infer from the fact that there

6

were uncalled witnesses that the uncalled witnesses would have exonerated the defendant.

Defense counsel stated no objections to the charge as read. The jury found Maxwell not guilty of one count of false imprisonment but guilty of two counts of rape, two counts of false imprisonment, and one count each of criminal attempt to commit rape, aggravated sodomy, and aggravated assault. He was convicted and sentenced to serve life without parole on both counts of rape, 10 years on both counts of false imprisonment, 30 years on criminal attempt to commit rape, 25 years on aggravated sodomy, and 20 years on aggravated assault. Maxwell filed a motion for new trial, and after a hearing, his motion was denied. This appeal followed.

1. Maxwell argues that the trial court erred in denying his motion to suppress his February 7, 2018 custodial statement made to an investigator about A. V. and J. I. after Maxwell had already been arrested and was represented by counsel on offenses related to the sexual assault of C. L. Specifically, Maxwell argues that this interview was in violation of his right to counsel under the United States and Georgia constitutions, citing to *Texas v. Cobb*, 532 U. S. 162 (121 SCt 1335, 149 LE2d 321) (2001), and *Chenoweth v. State*, 281 Ga. 7 (635 SE2d 730) (2006). We disagree.

As a preliminary matter, Maxwell's argument that the February 7, 2018 custodial interview violated his Sixth Amendment right under the United States Constitution is foreclosed by *Texas v. Cobb*, 532 U. S. 162 (186 S.Ct. 1335, 149 LE2d 321) (2001). In *Cobb*, the Supreme Court held that the Sixth Amendment right to counsel attaches only to charged offenses and that there is no exception for uncharged crimes that are "factually related" to a charged offense. 532 U. S. at 167-168. Further, when the Sixth Amendment attaches, it includes offenses that, even if not formally charged, would be considered the same offense under the test set forth in *Blockburger v. United States*, 284 U. S. 299 (52 SCt 180, 76 LE2d 306) (1932): "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Cobb*, 532 U. S. at 173. At the time of the custodial interview, Maxwell had not been charged with any offenses related to the sexual assaults of A. V. or J. I., and thus his Sixth Amendment right to counsel under the United States Constitution had not yet attached. See *Cobb*, 532 U. S. at 167-168; see also *Lewis v. State*, 311 Ga. 650, 658 (1) (e) (2) (b) n. 9 (859 SE2d 1) (2021) (because "a defendant's Sixth Amendment right to counsel is offense-specific . . . even to the extent Lewis's Sixth Amendment

8

right to counsel had attached with respect to the unrelated crimes for which he was [previously] indicted . . . they did not attach with respect to the crimes at issue in this appeal").

With regard to Maxwell's argument that the interview was in violation of his right to counsel under the Georgia Constitution because the Georgia Constitution's right to counsel provision should be interpreted more broadly than the Sixth Amendment, Maxwell has waived this argument for ordinary appellate review. Maxwell did not make this argument prior to or during trial, and it is well-accepted that "a constitutional challenge may not be raised for the first time in a motion for new trial." *Rogers v. Barnett*, 237 Ga. App. 301, 302 (3) (514 SE2d 443) (1999). Further, "[i]n challenging a trial court's denial of a motion to suppress, a defendant may not argue on appeal grounds that he did not argue (and obtain a ruling on) below." *Runnells v. State*, 357 Ga. App. 572, 573 (851 SE2d 196) (2020). Although Maxwell's motion to suppress generally raises Sixth Amendment issues, it does not cite to *Cobb*, mention the *Blockburger* test, or advance any argument that the Georgia Constitution's right to counsel provision should be given a more expansive interpretation than the Sixth Amendment.

9

Maxwell now "reasserts the arguments [he] raised for the first time in [his] motion for new trial." *Rogers*, 237 Ga. App. at 302-303 (3). "Accordingly, ordinary appellate review of the argument has been waived." See *Bernal v. State*, 358 Ga. App. 681 (856 SE2d 64) (2021), citing *State v. Herrera-Bustamante*, 304 Ga. 259, 236 (2) (a) (818 SE2d 552) (2018). "However, the unavailability of ordinary review does not end our analysis because our new Evidence Code permits plain error review of certain unpreserved evidentiary errors affecting substantial rights." (Citation and punctuation omitted.) *Bernal*, 358 Ga. App. at 691 (2) (c) (ii). Our Supreme Court has established the following test for determining whether there is plain error:

> First, there must be an error or defect–some sort of deviation from a legal rule–that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error–discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

10

(Citation and punctuation omitted; emphasis in original.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). "[A]s our Supreme Court has emphasized, satisfying the plain-error standard is difficult, as it should be. And the burden of establishing plain error falls squarely on the defendant." *State v. Crist*, 341 Ga. App. 411, 415 (801 SE2d 545) (2017).

"[A]n error is plain only if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point." *Davis v. State*, 312 Ga. 870, 874 (2) (866 SE2d 390) (2021). Here, our Supreme Court has yet to decide whether the right to counsel provision of the Georgia Constitution should be interpreted more broadly than the Sixth Amendment and in accordance with the argument advanced by Maxwell. When previously presented with this issue, our Supreme Court declined to decide it given the posture of the case before it. See *Chenoweth v. State*, 281 Ga. at 10 ("We need not decide . . . whether to construe the right to counsel under the Georgia Constitution to be consistent with the majority or the dissenting opinion in *Cobb*, as, even under the dissenting opinion in *Cobb*, Chenoweth was not denied his right to counsel"). Given the lack of authority supporting Maxwell's position, there was no clear or obvious error in the trial court's denial of his motion to suppress his February 7, 2018 custodial statements. See

11

*Beasley v. State*, 305 Ga. 231, 236 (3) (824 SE2d 311) (2019) (no obvious error where Georgia Supreme Court had not decided the issue on appeal and prior Court of Appeals case on issue remained good law).

2. Maxwell argues that the trial court erred in denying his motion for severance of the offenses, contending that the trial court did not consider whether severance of the offenses would promote a fair determination of guilt or innocence as to each offense. We disagree.[1]

As our Supreme Court has held,

a defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character because of the great risk of prejudice from a joint disposition of unrelated charges. However, where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique. Furthermore, where evidence of one charge would be admissible in the trial of another, a trial court does not abuse its discretion by denying a motion for severance.

---

[1] Maxwell also argues that the State should not have been permitted to join the trials of the three cases because the State acquired evidence in violation of his right to counsel under the United States and Georgia constitutions, but as discussed in Section 1, this enumeration fails.

(Citation omitted.) *Lowe v. State*, 314 Ga. 788, 791-792(2) (a) (879 SE2d 492) (2022). "When exercising that discretion, the trial court must determine if severance of the charges would promote a fair determination of the defendant's guilt or innocence of each charge." (Citation and punctuation omitted.) *Harris v. State*, 314 Ga. 238, 281 (4) (875 SE2d 659) (2022). "The court should consider whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense, and balance the interest of the defendant with the interest of the State." (Citations and punctuation omitted.) *Quenga v. State*, 270 Ga. App. 141, 145 (2) (605 SE2d 860) (2004).

Contrary to Maxwell's assertion, the trial court's pretrial order denying Maxwell's motion to sever did analyze whether the jury would be able to fairly and intelligently judge each of the offenses. The court found that there were only eight counts to the indictment related to three discrete cases; that there was not much overlap in the evidence aside from DNA evidence; and that the cases were "not terribly complex" and the evidence "fairly straightforward" such that "the jury should have little difficulty parsing the evidence and applying the law with regard to each charge." Thus, the trial court properly considered the relevant factors in determining

13

whether severance would promote a fair determination of guilt or innocence as to each offense and did not abuse its discretion in denying severance. See *Quenga*, 270 Ga. App. at 145 (2) (no abuse of discretion where court "noted explicitly that it had given careful consideration to [appellant's] motion to sever, and had concluded that the number of charges and the complexity of the evidence would not preclude the trier of fact from distinguishing the evidence and applying the law intelligently as to each offense.") (punctuation omitted).

3. Maxwell contends that the trial court erred in instructing the jury with an "uncalled witness" charge, when the trial court should have been neutral on this subject matter, and that the failure to include a savings clause regarding the application of the burden of proof affected the outcome of the proceedings. We disagree.

Maxwell concedes that because he did not object to the uncalled witness charge when it was read to the jury, this alleged error is reviewed for plain error. See *Grullon v. State*, 313 Ga. 40, 45 (2) (867 SE2d 95) (2021) ("[W]hen an error in the jury instruction is enumerated and argued on appeal, the appellate court is required to conduct a plain error analysis."); *Collins v. State*, 308 Ga. 515, 519 (2) (842 SE2d 275) (2020) (reviewing claim for plain error, but not relying on affirmative waiver,

14

where "[a]t the conclusion of the jury charge, the trial court asked, 'Are there any objections to the charge ... on behalf of the defense?' Appellant's counsel replied, 'No, your honor'").

Before the trial court charged the jury, Maxwell objected to the uncalled witness charge as misleading and confusing. "[W]hile he did not object again after the final instructions were given, that does not show that [Maxwell] intentionally relinquished his known rights with regard to the [uncalled witness] instruction." *Grullon*, 313 Ga. at 46 (2) (a). Because Maxwell's claim of error was not affirmatively waived and survives the first step of plain error review, we consider the remaining plain error factors. *Kelly*, 290 Ga. at 33 (2) (a).

We need not decide whether the trial court's charge constituted an obvious error, however, because Maxwell has failed to show that the charge likely affected the outcome of the proceedings. "It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citation omitted.) *Henderson v. State*, 320 Ga. App. 553, 562 (8) (740 SE2d 280) (2013). Further, our Supreme Court has held that "defense and prosecuting counsel are equally able to comment on the failure of the other to present certain witnesses as long as that argument is derived from evidence properly before the

15

factfinder, that is, if there is competent evidence before the jury that a missing witness has knowledge of material and relevant facts." (Citations and punctuation omitted.) *Spear v. State*, 270 Ga. 628, 630 (3) (513 SE2d 489) (1999); see also *Morgan v. State*, 267 Ga. 203 (476 SE2d 747) (1996). Here, the trial court instructed the jury that the State bore the burden of proving "every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt" and that "the burden [of proof] never shifts to the defendant to introduce evidence or to prove innocence." Moreover, the trial court's instruction did not prohibit defense counsel from commenting on the State's failure to call certain witnesses, and defense counsel in fact did comment on the State's uncalled witnesses during closing arguments. Given the charges as a whole, we can find no evidence that the jury misunderstood the instructions on uncalled witnesses or the burden of proof; instead, the record, including the acquittal of Maxwell on one charge of false imprisonment, shows that the jury understood the law and the evidence before it. See *Crist*, 341 Ga. App. at 418. Accordingly, the trial court did not err by denying Maxwell's motion for new trial on this basis.

*Judgment affirmed. Gobeil, J., concurs. McFadden, P. J., concurring specially.*

A22A1697. MAXWELL v. THE STATE.

McFADDEN, Presiding Judge, concurring specially.

I agree that the questioning of Maxwell that is at issue was permissible under the Sixth Amendment, as construed in *Texas v. Cobb*, 532 U. S. 162 (121 SCt. 1335, 149 LE2d 321) (2001). And I agree that whether it was permissible under the Georgia Constitution is not properly before us. But whether that questioning was permissible under the Georgia Rules of Professional Conduct is another matter.

As explained by the majority, *Cobb* holds that the Sixth Amendment right to counsel applies only to "charged offenses" within "the four corners of the charging instrument" or "offenses that, even if not formally charged, would be considered the

same offense under" the test used "to delineate the scope of the Fifth Amendment's Double Jeopardy Clause[.]" *Texas v. Cobb*, supra at 162, citing *Blockburger v. United States*, 284 U. S. 299 (52 SCt. 180, 76 LE 306) (1932), which addressed double jeopardy.

But it appears that the Georgia Bar Rule governing communication with persons represented by counsel "imposes restrictions that go beyond" the federal constitutional minimum identified in *Cobb*. See Rule 4.2 of the Georgia Rules of Professional Conduct, Bar Rule 4-102, Comment 2.

Rule 4.2 provides,

(a) A lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order.

(b) Attorneys for the State and Federal Government shall be subject to this Rule in the same manner as other attorneys in this State.

The maximum penalty for a violation of this Rule is disbarment.

A comment accompanying that rule is responsive to *Cobb.* It provides that ethically permissible "communications authorized by law" include "investigative activities" deemed by authoritative case precedent like *Cobb* to be "constitutionally

2

permissible" — but only when there is judicial precedent holding that those activities do not violate Rule 4.2. And it provides that Rule 4.2 exceeds the constitutional minimum.

> Communications authorized by law also include constitutionally permissible investigative activities of lawyers representing governmental entities, directly or through investigative agents, prior to the commencement of criminal or civil enforcement proceedings, *when there is applicable judicial precedent that either has found the activity permissible under this Rule or has found this Rule inapplicable. However, the Rule imposes ethical restrictions that go beyond those imposed by constitutional provisions.*

Rule 4.2, Comment 2 (emphasis added).

"The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule. The Preamble and this note on Scope provide general orientation. The Comments are intended as guides to interpretation, but the text of each Rule is authoritative." Georgia State Bar Rules and Regulations, PREAMBLE, SCOPE AND TERMINOLOGY, Par. 21.

If Rule 4.2 means what the comment says it means, the district attorney or assistant district attorney may have violated it when they directed their investigator to question Maxwell outside the presence of his attorney and without notice to his

3

attorney — at least to the extent that they planned to secure impeachment evidence to be used in the trial of the offense for which he had already been charged.

At oral argument, counsel for the state pointed out that there are no relevant cases construing Rule 4.2. And I agree with the majority that we need not construe that rule to decide this case. So it is up to the State Bar of Georgia to address this matter in the first instance. See *Innovative Images, LLC v. Summerville*, 309 Ga. 675, 679 (2) (848 SE2d 75) (2020).